**Darrell R. PAGE, Appellant,**

v.

**UNITED STATES of America.**

**No. 82–1218.**

United States Court of Appeals, District of Columbia Circuit.

Submitted Dec. 20, 1982.

Decided March 9, 1984.

As Amended March 13, 1984.

Darrell R. Page, pro se.

Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Royce C. Lamberth, R. Craig Lawrence and Judith Bartnoff, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before ROBINSON, Chief Judge, and TAMM, Circuit Judge and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Chief Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

In 1981, Darrell R. Page, a Korean-era Army veteran, instituted this litigation *pro se* in the District Court against the United States under the Federal Tort Claims Act.[1] The gravamen of Page's case is that the Veterans Administration (VA) subjected him to harmful drugs during a course of treatment extending from 1961 to 1980.[2] Page charges that VA personnel caused him "severe damage and addiction" by "wrongfully mix[ing] dangerous drugs which do not mix, wrongfully prescrib[ing] too heavy a load of dangerous drugs, and wrongfully [failing to] properly monitor the drugs and [his] medical condition and drug caused injuries."[3] Specifically, Page asserts that VA doctors routinely mailed to him the drugs Mellaril, Darvon, Artane and ProBanthine for months and sometimes years without adequately monitoring his condition.[4] Page claims severe physical and mental injury as a result of the alleged addiction, but informs us that the drugs were removed and the addiction "broken" about March, 1980.[5]

Page's 1981 lawsuit is not his first challenge to the treatment administered by VA. In 1972, he brought a similar action, which the District Court dismissed, apparently on the ground that it was statutorily time-barred.[6] Subsequently, this court granted the Government's unopposed motion for summary affirmance.[7]

Page's 1981 case also was dismissed by the District Court, on grounds of both res judicata and statutory time limitations.[8] On this appeal, he contends that even if the dismissal of the first suit extinguished any cause of action then existing, it cannot be res judicata as to any that may have accrued subsequently. Page also argues that he advanced his present claims, both administrative and judicial, well within the legislatively-prescribed period if measured from termination of drug treatments in 1980. We conclude that neither res judicata nor any applicable statutory time restraint completely forecloses this litigation. Accordingly, we reverse and remand for further proceedings.

1. 28 U.S.C. §§ 2671–2680 (1976 & Supp. V 1981).

2. See Complaint, *Page v. United States*, Civ. No. 81–2327 (D.D.C.) (filed Sept. 21, 1981), reproduced in Appendix to Brief for Appellant (App.) A–4(1) to (11).

3. Complaint, *supra* note 2, ¶ 3, App. A–4(2).

4. Complaint, *supra* note 2, ¶¶ 5, 19, App. A–4(2), (9).

5. Complaint, *supra* note 2, ¶ 23, App. A–4(11).

6. *Page v. United States*, Civ. No. 2547–72 (D.D.C.) (order filed May 10, 1973), App. A–1. The order gave no reason for the dismissal, but the memorandum in support of the Government's motion to dismiss identified statutory time barriers as its basis. Addendum to Brief for Appellees (Add.) A–2 to A–6.

7. *Page v. United States*, No. 73–1731 (D.C.Cir.) (order filed Sept. 25, 1973), App. A–2.

8. *Page v. United States, supra* note 2, (order filed Feb. 24, 1982), Add. A–1. The court noted the 1973 order and stated, without further explanation, that the Government's arguments on res judicata and the statutory time-limitation were "meritorious" and cause for dismissal.

## I. RES JUDICATA

■ The doctrine of res judicata is that "the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate—even if they chose not to exploit that opportunity—whether the initial judgment was erroneous or not."[9] The judgment bars any further claim based on the same "nucleus of facts," for "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies."[10]

■ We agree with the District Court that the order dismissing Page's 1972 suit, whether sound or not, is res judicata as to VA's treatment activities between 1961 and 1972. That order, however, cannot frustrate Page's current effort entirely. As the District Court duly noted, Page avers that the allegedly wrongful prescription of injurious drugs continued until 1980.[11] Since Page's 1972 action obviously could not have asserted claims based on facts that were not yet in existence, the dismissal of that action cannot be res judicata of Page's complaint respecting VA's conduct from 1972 to 1980.[12]

## II. STATUTORY TIME LIMITATIONS

Congress has specified that

[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.[13]

The question whether these conditions have been met is one of federal law.[14] On March 5, 1981, Page submitted his claim to VA,[15] which denied it by letter dated March 26, 1981,[16] after which, on September 21, 1981, Page filed his complaint in the Dis-

9. *Hardison v. Alexander,* 211 U.S.App.D.C. 51, 58, 655 F.2d 1281, 1288 (1981). See generally *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979); *Expert Elec., Inc. v. Levine,* 554 F.2d 1227, 1232–1233 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

10. *Expert Elec., Inc. v. Levine, supra* note 9, 554 F.2d at 1234; see also *Montana v. United States, supra* note 9, 440 U.S. at 153, 99 S.Ct. at 973, 59 L.Ed.2d at 217.

11. On review of an order dismissing an action for failure to state a claim upon which relief can be granted, the allegations of the complaint must be taken as true. *E.g., Boykin v. District of Columbia,* 223 U.S.App.D.C. 80, 82, 689 F.2d 1092, 1094 (1982); *Harper v. McDonald,* 220 U.S.App.D.C. 137, 142, 679 F.2d 955, 960 (1982).

12. See, *e.g., Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 327–328, 75 S.Ct. 865, 866, 99 L.Ed. 1122, 1127 (1955) (prior adjudication does not bar similar action based on subsequent acts even if both suits involve "essentially the same course of wrongful conduct"); accord, *Exhibitors Poster Exchange, Inc. v. National Screen Serv. Corp.,* 421 F.2d 1313, 1318 (5th Cir.1970), *cert. denied,* 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed.2d 439 (1971); *Cream Top Creamery v. Dean Milk Co.,* 383 F.2d 358, 363 (6th Cir.1967). Nor is Page collaterally estopped from pressing his negligence theory in this new action. The only issue not open is whether pre-1972 claims are time-barred. See generally *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308, 313 (1980); *Montana v. United States, supra* note 9, 440 U.S. at 153, 99 S.Ct. at 973, 59 L.Ed.2d at 217.

13. 28 U.S.C. § 2401(b) (1976). As we have explained, this provision "requires the claimant *both* to file the claim with the agency within two years after accrual of the claim and then to file a complaint in the District Court within six months after the agency denies the claim." *Schuler v. United States,* 202 U.S.App.D.C. 199, 201, 628 F.2d 199, 201 (*en banc* 1980) (emphasis in original).

14. *Kossick v. United States,* 330 F.2d 933, 936 (2d Cir.), *cert. denied,* 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964); *Tyminski v. United States,* 481 F.2d 257, 262 (3d Cir.1973); *Stoleson v. United States,* 629 F.2d 1265, 1268 (7th Cir. 1980); *Wollman v. Gross,* 637 F.2d 544, 551 (8th Cir.1980); *Reilly v. United States,* 513 F.2d 147, 148 (8th Cir.1975); *Bailey v. United States,* 642 F.2d 344, 347 n. 1 (9th Cir.1981). But see *Hau v. United States,* 575 F.2d 1000, 1002 (1st Cir. 1978).

15. Complaint, *supra* note 2, App. A–4(1).

16. Complaint, *supra* note 2, App. A–4(1).

trict Court.[17] On this predicate, Page insists that his cause of action is timely because the onset of the statutory time limitations should be measured from termination of drug therapy in 1980.[18]

In *United States v. Kubrick*,[19] however, the Supreme Court held that when a tort action against the Government charges malpractice, the statutory limitations begin to run "when the plaintiff knows both the existence and the cause of his injury."[20] The Government contends that the *Kubrick* rule demolishes Page's present lawsuit on the ground that the cause of action accrued and set the limitation periods into motion in December, 1971, when Page brought his first administrative claim and thereby demonstrated actual knowledge "of his alleged injury and its alleged cause."[21]

■ We note initially that regardless of when Page learned that he had reason to sue, the limitation periods could not have expired on any malpractice within the two years immediately prior to Page's 1981 submission to VA. Just as res judicata cannot

bar a claim predicated on events that have not yet transpired, knowledge acquired in 1972 that one has a claim could not trigger time limitations on allegedly tortious conduct that had not then occurred. Thus, at least to the extent that Page charged malpractice taking place less than two years before his administrative presentation, the District Court erred in dismissing his case on grounds of untimeliness.

Page seeks damages, however, for the entire course of his VA treatment, which spanned almost two decades. As we already have said, relitigation of his claim of pre-1972 malpractice is precluded by res judicata.[22] The remaining issue, therefore, is whether the statutory time limitations ban action by Page for assertedly continuing treatment and injury from 1972 until 1980.

■ It is well-settled that "[w]hen a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases."[23] Since usually no single incident in a continuous chain of tortious activity

---

17. Complaint, *supra* note 2, App. A–4(11).

18. See Brief for Appellant at 5; Complaint, *supra* note 2, ¶ 23, App. A–4(11).

19. 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

20. *Id.* at 113, 123–124, 100 S.Ct. at 355, 360, 62 L.Ed.2d at 264, 270–271 (alleged negligent antibiotic treatment for bone infection causing deafness). This court already had adopted a similar rule. *Sanders v. United States*, 179 U.S.App.D.C. 272, 274, 551 F.2d 458, 460 (1977) (alleged negligent treatment during caesarean delivery damaging bladder and uterus) citing *Jones v. Rogers Memorial Hosp.*, 143 U.S.App.D.C. 51, 52–53, 442 F.2d 773, 774–775 (1971). In other courts, the *Kubrick* rule has been alleged to bar tort claims against the Government when negligence was assigned in 1973 for oral polio vaccine ingestion in 1963, *Davis v. United States*, 642 F.2d 328, 330–331 (9th Cir.1981), *cert. denied*, 455 U.S. 919, 102 S.Ct. 1273, 71 L.Ed.2d 459 (1982); when in 1976 parents alleged negligent diagnosis and treatment of a child's jaundice at birth in 1958, and parents had been in possession of the medical records since the child's discharge, *Fernandez v. United States*, 673 F.2d 269, 270–271 (9th Cir.1982); and when a misdiagnosis years old was corrected and proper surgery was performed, but no claim then made for four

years. *Gustavson v. United States*, 655 F.2d 1034, 1036, 1037 (10th Cir.1981).

21. Brief for Appellee at 8. See also *id.* at 2 (1972 lawsuit demonstrated awareness of injuries and their cause).

22. See text *supra* at notes 9–11.

23. *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir.1974), *vacated on other grounds*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). See also *Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Fowkes v. Pennsylvania R.R.*, 264 F.2d 397, 399 (3d Cir. 1959); *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir.1980); *Gross v. United States*, 676 F.2d 295, 300 (8th Cir.1982); *Fletcher v. Union Pac. R.R.*, 621 F.2d 902, 907–908 (8th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981); *Logiurato v. ACTION*, 490 F.Supp. 84, 91 (D.D.C.1980). This continuing-tort doctrine, which becomes relevant only when the tortious conduct is ongoing, is to be distinguished from the rule applicable when the plaintiff's injury continues or is manifested after the tortious conduct has ceased. See, *e.g.*, *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Wilson v. Johns-Manville Sales Corp.*, 221 U.S.App.D.C. 337, 684 F.2d 111 (1982).

can "fairly or realistically be identified as the cause of significant harm," [24] it seems proper to regard the cumulative effect of the conduct as actionable. Moreover, since "one should not be allowed to acquire a right to continue the tortious conduct," [25] it follows logically that statutes of limitation should not run prior to its cessation.

The continuing-tort doctrine has been applied in cases various invoking several federal statutes. It has been held that a cause of action for permanent physical injury sustained by operation of a jackhammer over a period of 28 years did not accrue under the Federal Employers' Liability Act [26] until the employee was assigned to new and lighter duties. [27] An employee, barred from recovering damages for an initial on-the-job injury, under the same legislation, was allowed to recover for continued assignment to the injury-producing post by the employer despite the employee's and his physician's attempts to secure a transfer. [28] A prisoner, time-barred from maintaining an action for an assault and battery committed while he was in prison, was deemed to have a cause of action under civil rights legislation [29] for a continuing failure to provide necessary post-injury medical attention. [30] Of particular note is a recent decision under the Federal Tort Claims Act applying the continuing-tort doctrine in a suit alleging that for 20 years the Department of Agriculture intentionally inflicted emotional distress by wrongfully denying the plaintiff participation in certain federal programs. [31] The continuing character of the Government's conduct led the court to conclude that the time limitations applicable to tort claims against the Government did not become operable at the time the plaintiff knew or should have known of his injury; [32] rather, the court held that "[w]here the tortious conduct is of a continuing nature, the *Kubrick* rule does not apply." [33] The court declared that the activity alleged constituted a continuing tort, and that the limitation applicable therefore "[ran] from the date of the last tortious act," [34] and remanded for additional fact-finding as to when that final act occurred. [35]

We view the injury claimed by Page as gradual, resulting from the cumulative impact of years of allegedly tortious drug treatment. To us it seems unrealistic to regard each prescription of drugs as the

---

**24.** *Fowkes v. Pennsylvania R.R., supra* note 23, 264 F.2d at 399.

**25.** *Fletcher v. Union Pac. R.R., supra* note 23, 621 F.2d at 908; *cf. Underwater Storage, Inc. v. United States Rubber Co.,* 125 U.S.App.D.C. 297, 302, 371 F.2d 950, 955 (1966), *cert. denied,* 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784 (1967) (claim for initial misappropriation of trade secret time-barred but, to prevent wrongdoers from " 'baptiz[ing]' their wrongful actions," recovery allowed for use during statutory period).

**26.** The pertinent statutory section provides that "[n]o action shall be maintained ... unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56 (1976).

**27.** *Fowkes v. Pennsylvania R.R., supra* note 23, 264 F.2d at 398, 399.

**28.** *Fletcher v. Union Pac. R.R., supra* note 23, 621 F.2d at 907–908.

**29.** 42 U.S.C. § 1983 (1976 & Supp. V 1981).

**30.** *Lavellee v. Listi, supra* note 23, 611 F.2d at 1132. See also *Donaldson v. O'Connor, supra* note 23, 493 F.2d at 529 (continuous hospitalization without psychiatric treatment is tort involving continuing injury; § 1983 cause of action accrued when patient was released).

**31.** *Gross v. United States, supra* note 23, 676 F.2d at 297, 300.

**32.** *Id.* at 300.

**33.** *Id.* See note 20 *supra* (describing situations in which *Kubrick* rule does apply).

**34.** *Gross v. United States, supra* note 23, 676 F.2d at 300, citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380–381, 102 S.Ct. 1114, 1125, 71 L.Ed.2d 214, 230 (1982) (continuing violation of Fair Housing Act should be treated differently from single discrete discriminatory act, and makes complaint of entire "unlawful practice" timely when filed within limitation period as measured from "last asserted occurrence of that practice"). See also *Cooper v. United States,* 442 F.2d 908, 912 (7th Cir.1971) ("[t]he continuing wrongful conduct of the defendant toward the claimant which establishes a status quo of continuing injury may also give rise to a continuing cause of action").

**35.** *Gross v. United States, supra* note 23, 676 F.2d at 300.

cause of a separate injury, or as a separate tortious act triggering a new limitation period. Page charges precisely the sort of continuous conduct accreting physical and mental injury that justifies characterization as a continuing tort. Resultingly, the cause of action Page stakes on continuous drug treatment did not accrue, and the statutory limitations did not come into play, until the allegedly tortious conduct came to a halt in 1980. Furthermore, Page's awareness since at least 1972 of his addiction and the attendant harm does not defeat application of the continuing-tort doctrine [36] since its very purpose would be to deny VA an open-ended license to continue the drug program that assertedly caused and maintained Page's addiction.[37]

We hold that Page's claim that VA wrongfully prescribed addictive drugs without proper monitoring did not accrue for purposes of the statutory limitation on suit-filing until treatment was terminated in 1980. Page is free to proceed with this litigation, but we intimate no view on the merits. The District Court's order of dismissal accordingly is reversed, and the case is remanded to that court for proceedings consistent with this opinion.

*So ordered.*

---

**36.** There is also a tolling doctrine of "continuous treatment" that likewise may be relevant. That doctrine, first enunciated in *Borgia v. City of New York*, 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962), holds that "when there has been a course of continuous medical treatment, a cause of action for malpractice accrues at the end of the continuous treatment if the treatment has been for the same illness or injury out of which the claim for malpractice arose." *Holdridge v. Heyer-Schulte Corp.*, 440 F.Supp. 1088, 1098 (N.D.N.Y.1977) (applying New York law). See generally *Barrella v. Richmond Memorial Hosp.*, 88 A.D.2d 379, 453 N.Y.S.2d 444 (1982) (continuous treatment doctrine "tolls the running of the Statute of Limitations"); *McDermott v. Torre*, 56 N.Y.2d 399, 452 N.Y.S.2d 351, 437 N.E.2d 1108 (1982) (same). The Second Circuit has held the doctrine applicable to an action arising under the Federal Tort Claims Act on the ground that " '[i]t would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent.' " *Kossick v. United States*, *supra* note 14, 330 F.2d at 936, quoting *Borgia v. City of New York*, *supra*, 12 N.Y.2d at 156, 237 N.Y.S.2d at 321–322, 187 N.E.2d at 779. But see *Tyminski v. United States*, *supra* note 14, 481 F.2d at 264 n. 5; *Reilly v. United States*, *supra* note 14, 513 F.2d at 150; *Ashley v. United States*, 413 F.2d 490, 493 (9th Cir.1969) (continuous-treatment doctrine not available to toll statute of limitations in medical malpractice action brought under Federal Tort Claims Act where plaintiff knows of the acts constituting negligence).

In any event, application of the continuous-treatment doctrine requires "the continued existence of the personal, confidential physician-patient relationship." *Ciccarone v. United States*, 486 F.2d 253, 257 (3d Cir.1973). A limitation period is not tolled by "merely intermittent" medical services, *Holdridge v. Heyer-Schulte Corp.*, *supra*, 440 F.Supp. at 1098, or "merely occasional hospital visits at substantial intervals," *Kossick v. United States*, *supra* note 14, 330 F.2d at 936. It has also been held that "treatment from succeeding government physicians" does not interrupt the running of the limitation when the personal relationship with the physician charged with malpractice has ended and that physician "is not claimed to have acted in direct concert with the succeeding physicians." *Brown v. United States*, 353 F.2d 578, 580 (9th Cir.1965) (a case arising under the Federal Tort Claims Act). See also *Camire v. United States*, 535 F.2d 749, 750 (2d Cir.1976); *Hulver v. United States*, 562 F.2d 1132, 1137 (8th Cir.1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978). But see *Accardi v. United States*, 356 F.Supp. 218, 221, 222 (S.D.N.Y.1973) (treatment at different public hospitals over four-year period sufficient to toll).

It is unclear from Page's complaint whether he was receiving continuous treatment from any particular VA physician or hospital; he alleges only that VA engaged in continuous tortious conduct. We thus are unable to determine whether the continuous-treatment doctrine may be applicable to this case. That, however, will be for the District Court to consider upon remand of this case.

**37.** See *Fowkes v. Pennsylvania R.R.*, *supra* note 23, 264 F.2d at 400 ("unnecessary to consider" plaintiff's knowledge of injury); *Fletcher v. Union Pac. R.R.*, *supra* note 23, 621 F.2d at 909 ("[t]he employee's knowledge of his physical condition does not absolve the railroad of its duty to protect the employee from further injury"); *Gross v. United States*, *supra* note 23, 676 F.2d at 300 ("[w]here the tortious conduct is of a continuing nature, the *Kubrick* rule does not apply").