**John W. CHILDRESS, Plaintiff,**

v.

**NORTHROP CORPORATION, et al., Defendants.**

Civ. A. No. 84–2510.

United States District Court, District of Columbia.

Jan. 15, 1985.

John W. Childress, III, pro se.

Joseph F. Cunningham, Washington, D.C., for defendant Northrop Corp.

William J. Dean, Atty., U.S. Dept. of Justice, Washington, D.C., for defendant Egger.

### MEMORANDUM

GASCH, District Judge.

## I. BACKGROUND

Plaintiff John W. Childress, III, filed this action against defendants Northrop Corpo-

1. The Court heard Mr. Childress, who instituted this action *pro se,* and counsel for defendants on all these motions at a hearing held on November 30, 1984, beginning at 2:00 P.M. Seven minutes before that hearing began, Mr. Childress filed an application for a temporary restraining order without notice to the adverse party (the Internal Revenue Service), as well as a motion for preliminary injunction directed against the IRS. Mr. Childress did not inform the Court that he was seeking emergency injunctive relief during the hearing held on November 30.

After reviewing Mr. Childress' application for temporary restraining order and motion for preliminary injunction, the Court finds no new allegations beyond those raised in the motions that the Court heard on November 30. Plaintiff's effort to seek such relief is barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a), which expressly precludes the federal courts from granting injunctive relief "for the purpose of

ration ("Northrop") and Commissioner Roscoe L. Egger, Jr. of the Internal Revenue Service ("IRS") on August 15, 1984. The complaint asserts that jurisdiction is based upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). The essence of Mr. Childress' claim against Northrop seems to be that Northrop issued fraudulent W-2 statements to plaintiff and to the IRS in February of 1978 that falsely claimed Mr. Childress had received $8,000 more in compensation than was in fact paid him. Mr. Childress' claim against the Government is that the actions of the IRS in pursuing assessment and/or collections activities against him were tortious and constitute a denial of his constitutional rights.

The case is now before the Court on dispositive motions filed by each of the parties. Defendant Northrop has filed a motion to dismiss on statute of limitations grounds. The Government has filed a motion to dismiss or, in the alternative, for summary judgment. In addition to opposing these motions, plaintiff has filed his own motion for summary judgment.[1]

## II. NORTHROP MOTION TO DISMISS

Defendant Northrop's motion to dismiss is based on its assertion that plaintiff's

restraining the assessment or collection of any tax...." As the Supreme Court has noted, the purpose of this provision is the "protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference." *Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974). The action does not fall within any of the exceptions to the Anti-Injunction Act. In addition, the Court finds that plaintiff has failed to meet the general requirements for obtaining such injunctive relief. For example, as is clear from the cases cited in this memorandum dismissing plaintiff's claim against the Government, it cannot be said that plaintiff has shown or could show a likelihood of success on the merits. *See Virginia Petroleum Jobbers Association v. Federal Power Commission,* 259 F.2d 921, 925 (D.C. Cir.1958). Accordingly, plaintiff's application for temporary restraining order and motion for preliminary injunction are denied.

claims against it are barred by the statute of limitations.

Plaintiff filed his complaint on August 15, 1984. His complaint alleges that "[o]n or about February 1978, Northrop Corporation, willfully and knowingly issued W–2 statements to plaintiff and to the other defendant, the Internal Revenue Service of the United States of America, which were false." Complaint ¶ 2. Northrop contends that the complaint alleges the commission of tortious acts more than six years before plaintiff filed his complaint and thus that the action is time barred whether the three year limitation period contained in the D.C. Code [2] or the two year period in the FTCA [3] controls.

In opposing Northrop's motion to dismiss, Mr. Childress argues that Northrop's alleged tortious conduct was not committed on a date certain but is a continuing tort that continues to this date. Thus Mr. Childress contends that he could not have been aware of the tortious nature of Northrop's act in 1978 as he might well have presumed it to be a bookkeeping error. Instead, Mr. Childress maintains that the basis for the alleged tort is Northrop's subsequent refusal to correct the W–2. His opposition and complaint indicate that he initially sought such a correction in 1979 and that he did so most recently in June 1984.

In making this argument, plaintiff appears to rely on the continuing tort exception to the operation of the statute of limitations.[4] For example, in *Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979, 987 (D.C.Cir.1973), the Court of Appeals for this Circuit held that a complaint of racial employment discrimination by an employer and a union constituted an allegation not merely of an early isolated refusal of employment (that would have been barred under the applicable statute of limitations) but a *continued* discriminatory hiring system which denied appellant the right of hiring opportunity on a nondiscriminatory basis. The Court viewed the initial refusal of employment as merely a single episode in the maintenance of that continuing conspiracy and noted that plaintiff had alleged that "a discriminatory hiring system continues to exist and continues to deny [minority applicants] jobs." *Id.*

Defendant Northrop challenges the applicability of the continuing tort exception to this case. In doing so, defendant relies principally on *Fitzgerald v. Seamans*, 553

---

**2.** D.C.Code Ann. § 12–301(8).

**3.** 28 U.S.C. § 2401(b).

**4.** Plaintiff also appears to rely on the equitable doctrine of fraudulent concealment which recognizes "where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute [of limitations] does not begin to run until the fraud is discovered....'" *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874)). Courts have held that this doctrine is to be read into every federal statute of limitations as well as the District of Columbia's limitations statute. *See, e.g., Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C.Cir.1977) ("Read into every federal statute of limitations ... is the equitable doctrine that in case of defendant's fraud or deliberate concealment of material acts relative to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit" (citations omitted)); *King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186 (D.C.1978) (where plaintiff alleges fraud, D.C.

Code § 12–301(8) requires that suit be brought "within three years from the time the fraud either is discovered or reasonably should have been discovered"). Leaving aside when plaintiff in the exercise of diligence would have known of any tortious conduct by Northrop, here plaintiff's opposition makes clear that by 1979 he was aware of the conduct he alleges to have been fraudulent. Thus under plaintiff's own view of the facts the applicable statute of limitations would have begun to run in 1979. *See infra* note 6. In addition, plaintiff's claim that the doctrine of fraudulent concealment is applicable is undermined by the fact that plaintiff alleges Northrop, in issuing the false W–2's, sent a copy to plaintiff himself in 1978. Thus it is difficult to see how plaintiff can claim that he was "prevented from ascertaining the facts or induced to refrain from filing suit" by Northrop. *See Doolin v. Environmental Power Ltd.*, 360 A.2d 493, 497 (D.C.1976); *see also Adrian v. American Security & Trust Company*, 211 A.2d 771 (D.C.1965) (unless plaintiff can establish willful concealment of tortious act with intent to deceive plaintiff, doctrine of fraudulent concealment not applicable and statute of limitations starts to run from the time the alleged wrongful act was in fact committed).

F.2d 220, 230 (D.C.Cir.1977), where the Court of Appeals declared that "the mere failure to right a wrong and make plaintiff whole cannot be a continuing wrong which tolls the statute of limitations, for that is the purpose of any lawsuit and the exception would obliterate the rule." In that case plaintiff [5] alleged that the Air Force's decision to discharge him and its response to administrative proceedings requiring his reinstatement constituted a single continuing conspiracy. However, the Court rejected the claim of a continuing wrong as "general and conclusory." *Id.* For example, the Court rejected plaintiff's claim that the Defense Department's tortious conduct had continued when a private employer refused to hire plaintiff as a result of the Department's hostile attitude toward plaintiff as the Court found plaintiff had failed to allege any "active steps to blackball him." *Id.*

 The Court finds defendant Northrop's reliance on *Fitzgerald* and its argument that the continuing tort theory is not applicable to be persuasive. Even assuming, as plaintiff contends, that plaintiff might have thought that Northrop had only committed a bookkeeping error in 1978 and that Northrop's actions first became tortious "in 1979" [6] when Northrop refused to correct the W–2 form by issuing an amended form, the 1979 activities would have occurred three and one-half to four and one-half years before suit was filed. The only action the complaint alleges since that time is a failure to "issue amended returns despite requests." This seems to represent the kind of "failure to right a wrong" that the *Fitzgerald* court recognized is not an exception to the statute rather than a case, as in *Macklin*, where specific acts occurred in furtherance of the original wrongdoing. *See also Page v. United States,* 729 F.2d 818, 821 n. 23 (D.C.Cir.1984) ("continuing-tort doctrine, which becomes relevant *only when the tortious conduct is ongoing,* is to be distinguished from the rule applicable when the plaintiff's injury continues or is manifested after the tortious conduct has ceased" (emphasis supplied)); *Collins v. United Air Lines, Inc.,* 514 F.2d 594, 595–96 (9th Cir.1975) (fact that employer refused discharged employee's application for reinstatement does not render the initial discharge a continuing act since request for reinstatement merely seeks to redress original termination). This reasoning appears to be consistent with the basis for application of the continuing tort theory: that "no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of significant harm.'" *Page,* 729 F.2d at 821–22 (quoting *Fowkes v. Pennsylvania R.R.,* 264 F.2d 397, 399 (3d Cir.1959)).

## III. GOVERNMENT MOTION TO DISMISS

Plaintiff's complaint also includes allegations challenging actions of the Internal

---

**5.** Plaintiff A. Ernest Fitzgerald had been Assistant Secretary of the Air Force for Financial Management. He alleged that he was discharged after revealing possible cost overruns on the C–5A transport plane.

**6.** Plaintiff contended in his written opposition to Northrop's motion that Northrop's actions first became tortious "in 1979." *See* Statement of Points and Authorities [in Opposition to Motion of Defendant Northrop's Motion to Dismiss] at 2 ("The action did not become tortious until Northrop refused to correct the W–2, initially in 1979 and continuously to date."). As discussed above, even if plaintiff is correct that 1979 was the point at which the cause of action accrued, the claim is still barred by the statute of limitations.

At the hearing on the Northrop motion to dismiss held on November 30, Mr. Childress took a different approach, arguing that the tort did not accrue until the Internal Revenue Service took steps in 1981 that demonstrated to plaintiff that the IRS was unwilling to accept his explanation with regard to the $8,000 and would not require Northrop to clarify the matter. However, the Court rejects plaintiff's claim that a determination as to when defendant Northrop's actions became tortious turns on the actions of the Government. Plaintiff's opposition and complaint make clear that he was aware of Northrop's actions in allegedly overreporting his income in 1978 and that he was satisfied that Northrop acted with fraudulent intent in 1979. The fact that he felt a greater urgency in resolving the matter with Northrop after he realized that the IRS might initiate assessment proceedings against him does not mean that Northrop's actions did not become tortious until that later point.

Revenue Service. Plaintiff alleges that the IRS "refused to verify that the W–2 submitted by Northrop Corporation was in error" and that it "confiscated the plaintiff's IRA [Individual Retirement Account] and checking accounts, filed liens against the plaintiff and confiscated tax refunds...." Complaint ¶¶ 7, 9. He alleges that the Government's actions were "tortious" and "designed to deprive plaintiff of his civil rights, due process of law, emotional stability and economic freedom." *Id.* at ¶ 8.

The Government has filed a motion to dismiss or, in the alternative, for summary judgment. In seeking dismissal, the Government maintains: a) that plaintiff has failed to name the proper defendant for the Government; b) that the Court lacks subject matter jurisdiction over plaintiff's complaint since the FTCA excludes any claim "arising in respect of the assessment or the collection of any tax or customs duty ..."; and c) that the claim is barred as plaintiff failed to file a timely administrative claim.

### A. *Failure to Name Proper Party*

■ As the first ground for its motion to dismiss, the Government asserts that plaintiff failed to name the proper defendant for the Government. The caption of plaintiff's complaint identifies "Hon. Roscoe L. Eggers, [sic] Jr., Internal Revenue Service" as the defendant. The text of the complaint repeatedly identifies the Internal Revenue Service as a defendant and does not refer to "Eggers." *See* Complaint ¶¶ 7–13, 17. Paragraph one of the complaint states that it is filed pursuant to the Federal Tort Claims Act.

As the Government points out, a federal agency is not a proper defendant in a suit brought pursuant to the FTCA. Instead, such actions should be filed against the United States itself. *See, e.g., Sprecher v. Graber,* 716 F.2d 968 (2d Cir.1983) (FTCA authorizes suits only against the United

States itself and not against its individual agencies).[7] However, given the well established judicial policy of holding *pro se* complaints to less stringent standards in pleading, *see, e.g., Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), *Alley v. Dodge Hotel,* 501 F.2d 880, 883 (D.C.Cir.1974), it would seem harsh to dismiss the action on this basis. Were this the only defect in plaintiff's action against the Government, the Court would allow plaintiff to seek leave to substitute the United States as a defendant. However, plaintiff's claim must be dismissed on other grounds.

### B. *Exclusion of Claim from FTCA*

As its next basis for dismissal, the Government relies on the exclusion from the FTCA contained in 28 U.S.C. § 2680(c) of claims "arising in respect of the assessment or collection of any tax...." Plaintiff claims that this provision is not applicable as his allegations of fraud, discrimination, and violation of the Fourth, Eighth, and Fourteenth Amendments are not part of efforts in respect of collection of tax.

■ It is well settled that the Federal Tort Claims Act is only a limited waiver of sovereign immunity and that the United States can be sued only to the extent that it has waived its immunity. *See United States v. Orleans,* 425 U.S. 807, 814–15, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976); *Dalehite v. United States,* 346 U.S. 15, 30–31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953) ("interpretation of the Act ... starts from the accepted jurisprudential principle that no action lies against the United States unless the legislature has authorized it" (footnote omitted)). If one of the Act's exceptions applies to a claim for relief against the Government, that claim cannot be maintained under the FTCA. *Garbarino v. United States,* 666 F.2d 1061, 1065 (6th Cir.1981).

---

7. This conclusion stems from a reading of 28 U.S.C. § 1346(b) with 28 U.S.C. § 2679. Section 1346(b) provides that district courts should have the exclusive jurisdiction over civil actions against the United States for money damages arising from tort claims. Section 2679(a) provides that federal agencies cannot be sued in their own names under Section 1346(b). *Stewart v. United States,* 503 F.Supp. 59, 61 n. 3 (N.D.Ill.1980), *aff'd,* 655 F.2d 741 (7th Cir.1981).

Notwithstanding the broad sweep of plaintiff's claims, the case law construing Section 2680 is clear that this retention of the Government's sovereign immunity encompasses such tort and constitutional claims. As the Fifth Circuit stated in *Capozzoli v. Tracey*, 663 F.2d 654, 658 (5th Cir.1981), "Congress retained the United States' sovereign immunity for any claim *in respect of* the assessment or collection of taxes. This language is broad enough to encompass any activities of an IRS agent even remotely related to his or her official duties" (emphasis in original). Thus in *Capozzoli*, the Fifth Circuit held that a complaint claiming trespass and invasion of privacy by an IRS agent alleged to have "prowl[ed] about" and photographed a taxpayer in her nightclothes while on the taxpayer's land without consent was barred by Section 2680. *See also Heritage Hills Fellowship v. Plouff*, 555 F.Supp. 1290, 1294 (E.D.Mich.1983) (Section 2680(c) "broad enough" to encompass allegation that United States libeled plaintiff regarding tax liability). Similarly in *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978), a challenge to Internal Revenue Service action in levying on a bank account was held to be within the scope of this exclusion notwithstanding the claim that the levy violated plaintiff's constitutional rights. *See also Akers v. United States*, 539 F.Supp. 831, 832–33 (D.Conn.1982) (in action against Government, claim that Internal Revenue Service levy violative of Fourth and Fifth Amendments barred by Section 2680(c)), *aff'd*, 718 F.2d 1084 (2d Cir.1983).

In light of the above, it is clear that the Court lacks subject matter jurisdiction over this case. Accordingly, the Court will grant the Government's motion to dismiss all claims against the Government.[8]

---

**8.** Because of the Court's ruling that Section 2680 excludes plaintiff's claims from the scope of the Federal Tort Claims Act, the Court need not consider the Government's contention that plaintiff failed to file a timely administrative claim as required by 28 U.S.C. § 2675(a).

The Court notes that in filing his opposition to the Government's motion to dismiss, the plaintiff also stated that he was seeking summary judgment and attached what he characterized as a statement of material facts as to which there is no genuine issue. Even if the Court were not granting the motions of defendants discussed above, plaintiff's effort to obtain summary judgment would be without merit. First, although Federal Rule of Civil Procedure 56(c) provides for summary judgment to be decided on the basis of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," the only such materials in this case are plaintiff's complaint and the affidavit submitted by the Government concerning the Government's contention that plaintiff failed to file an administrative complaint. Thus it is impossible on the basis of such a limited record to say that no genuine issue of fact exists. Second, to the extent that plaintiff's list of material facts is merely a recitation of the facts he contends that defendants have failed to deny in making their motions to dismiss, it should be noted that Federal Rule of Civil Procedure 12(a) provides that an answer denying these facts which plaintiff asserts give rise to liability need not be filed until ten days after motions to dismiss have been ruled on. Obviously, there was no ruling on the two motions to dismiss filed by defendants in this case prior to the issuance of this memorandum and the order accompanying it.