# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 2, 2016        Decided March 22, 2016

No. 15-1163

DENNIS LAUTERBACH, SR.,
PETITIONER

v.

MICHAEL P. HUERTA, ADMINISTRATOR, FEDERAL AVIATION
ADMINISTRATION AND NATIONAL TRANSPORTATION SAFETY
BOARD,
RESPONDENTS

On Petition for Review of an Order of
the National Transportation Safety Board

*Jeffrey L. Zimring* argued the cause for petitioner. With him on the briefs was *Frederic E. Zimring*.

*Casey E. Gardner*, Attorney, Federal Aviation Administration, argued the cause and filed the brief for respondent.

Before: BROWN, PILLARD and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

2

PILLARD, *Circuit Judge*: Federally certified aircraft mechanic and pilot Dennis Lauterbach fraudulently sold helicopter rotor blades with maintenance records he had altered to hide the fact that another mechanic had deemed the blades to be unrepairable scrap. In adjacent statutory provisions, the Aviation Act requires the Federal Aviation Administration (FAA) permanently to revoke the pilot and mechanic certificates of: (A) anyone criminally convicted of violating federal law related to airplane-parts fraud or counterfeiting; or (B) anyone who the agency finds has engaged in conduct punishable under a law described in the preceding subsection, whether that person has or will be prosecuted. *See* 49 U.S.C. § 44726(b)(1)(A)-(B). In 2006, before any criminal prosecution, the FAA brought administrative charges against Lauterbach under both subsection (B), 49 U.S.C. § 44726(b)(1)(B), and a more flexible and general statutory certificate-revocation authority, 49 U.S.C. § 44709. The parties settled that case under the latter provision, with the FAA revoking Lauterbach's mechanic's certificate only temporarily and leaving his pilot's certificate intact. Later, the United States Attorney successfully criminally prosecuted Lauterbach under 18 U.S.C. § 38(a)(1)(C) for the same fraud. That conviction required the FAA permanently to revoke both Lauterbach's pilot and mechanic's certificates under subsection (A). 49 U.S.C. § 44726(b)(1)(A).

Lauterbach petitions for review of the final order of the National Transportation Safety Board (NTSB or the Board) that permanently revoked his certificates based on his criminal conviction. He contends that the FAA's earlier administrative action bars the FAA's permanent revocation order by operation of various preclusion doctrines, double jeopardy, and due process. We disagree. Subsection (A) of the statute plainly authorizes revocation of any airman

certificate after a qualifying conviction, even if the FAA unsuccessfully pursued a prior subsection (B) administrative action based on the events underlying the conviction. Revocation of airman certificates in those circumstances is a civil, remedial measure aimed at protecting public safety that does not offend principles of preclusion, double jeopardy, or due process. We therefore deny Lauterbach's petition for review.

I.

A.

The FAA issues "airman" certificates to qualifying pilots and aircraft mechanics, among others, without which pilots and mechanics may not work on aircrafts in air commerce. *See* 49 U.S.C. §§ 40102(8), 44702-44705, 44711(a)(2)(A); 14 C.F.R. § 43.3. To promote aviation safety, the FAA requires that certified airmen follow specific maintenance procedures and keep detailed records of any inspection, repair, or maintenance of aircraft and parts. *See* 49 U.S.C. § 44701(a), (c); 14 C.F.R. §§ 43.9, 43.11-43.17 & App. B, D. The FAA relies on the accuracy of those records to determine aircrafts' airworthiness. *See* 47 Fed. Reg. 41076, 41078 (Sep. 16, 1982).

Congress has made it a crime to "knowingly and with the intent to defraud . . . make[] or use[] any materially false writing, entry, certification, document, record, data plate, label, or electronic communication concerning any aircraft . . . part." 18 U.S.C. § 38(a)(1)(C). Recognizing the threat to public safety posed by counterfeit and fraudulently represented parts, Congress also has imposed civil sanctions for such conduct. *See* discussion *infra* note 1. As relevant here, subsection (A) of 49 U.S.C. § 44726(b)(1) provides that the FAA "shall" revoke an FAA airman certificate if the FAA

4

Administrator finds that its holder "was convicted in a court of law of a violation of a law of the United States relating to the installation, production, repair, or sale of a counterfeit or fraudulently-represented aviation part or material." *See also* 49 U.S.C. § 44711(c) (barring certain aviation employment of individuals convicted for violating laws relating to counterfeit or fraudulently represented aviation parts). Subsection (B) of the same statute requires the FAA to revoke a certificate if the Administrator determines that its holder "knowingly, and with the intent to defraud, carried out or facilitated an activity punishable under a law described in" subsection (A). 49 U.S.C. § 44726(b)(1)(B). Revocation under either subsection (A) or (B) is permanent unless the former certificate holder is acquitted, *id.* § 44726(e)(1), (e)(2)(B)(i), his or her conviction is reversed, *id.* § 44726(e)(2)(B)(ii), or if reissuance of a certificate will facilitate law enforcement efforts, *id.* § 44726(a)(2), (f). The FAA also has the separate, more general authority to amend, modify, suspend, or revoke an airman certificate if the Administrator otherwise finds that "safety in air commerce or air transportation and the public interest require that action." *Id.* § 44709(b)(1)(A).

## B.

Dennis Lauterbach is the former holder of both a commercial pilot certificate and an aircraft mechanic certificate. On February 14, 2006, the FAA issued an emergency order permanently revoking Lauterbach's pilot and mechanic certificates (2006 Order). In the 2006 Order, the FAA determined that Lauterbach intentionally tampered with maintenance records for two helicopter rotor blades. According to the order, the FAA's investigation revealed that, in 2005 and 2006, Lauterbach had whited out inspection entries labeling the blades unrepairable scrap, represented that the blades were in good shape with thousands of hours of

useful life remaining, and sold the blades for $42,000 to an individual who installed them on his helicopter. The buyer was unable to balance the blades for takeoff, and subsequent inspection revealed Lauterbach's fraudulent documentation. The 2006 Order permanently revoked Lauterbach's pilot and mechanic certificates pursuant to both the FAA's general statutory authority, 49 U.S.C. § 44709, and 49 U.S.C § 44726(b)(1)(B), concluding that Lauterbach intentionally sold aircraft parts using fraudulent records in violation of 18 U.S.C. § 38.

While Lauterbach's administrative appeal was pending, the parties settled. As part of the settlement, the FAA issued an amended order under 49 U.S.C. § 44709, revoking only Lauterbach's mechanic certificate—not his pilot certificate— for one year.

Nearly five years later, a jury convicted Lauterbach of criminal fraud in violation of 18 U.S.C. § 38 for the 2005 and 2006 sales of the helicopter rotor blades. Prompted by that conviction, the FAA issued the administrative order required by subsection (A), permanently revoking both Lauterbach's pilot certificate and his mechanic certificate (2013 Order). The 2013 Order rested on the FAA's determination that a jury had found Lauterbach guilty of a violation of 18 U.S.C. § 38(a)(1)(C), an offense relating to the sale of fraudulently represented aviation parts within the meaning of subsection (A).

Lauterbach appealed the 2013 Order to the NTSB, conceding his conviction under 18 U.S.C § 38, but contending that the FAA's settlement of its subsection (B) administrative case against him in 2006 precluded it from revoking his certificates under subsection (A). The ALJ granted Lauterbach's summary judgment motion on *res judicata*

grounds, concluding that there is an "identity of the cause of action" because the 2006 proceeding and 2013 proceeding were based on the "same nucleus of fact"—Lauterbach's sale of fraudulently represented aircraft parts in 2005 and 2006. J.A. 21. On appeal to the full board, the NTSB reversed the ALJ's decision and reinstated the 2013 Order. The Board concluded that the FAA was not precluded, either by *res judicata* or collateral estoppel, from issuing the 2013 Order because it involved distinct claims and issues from those set forth in the 2006 Order. The first—under subsection (B)—arose from the fraudulent aircraft-part sales, and the second—under subsection (A)—arose from Lauterbach's later conviction of a qualifying offense. Lauterbach timely petitioned this Court for review of the NTSB order.

## II.

We review questions of law on appeal from the NTSB *de novo* and must uphold the Board's order if it is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Casino Airlines, Inc. v. Nat'l Transp. Safety Bd.*, 439 F.3d 715, 717 (D.C. Cir. 2006); *Kratt v. Garvey*, 342 F.3d 475, 480 (6th Cir. 2003). We reject Lauterbach's contention that principles of preclusion, double jeopardy, or due process bar the FAA's 2013 Order, and accordingly deny the petition for review.

Under 49 U.S.C. § 44726, the FAA is required permanently to revoke FAA certificates if the Administrator finds that the holder of the certificate:

(A) was convicted in a court of law of a violation of a law of the United States relating to the installation, production, repair, or sale of a counterfeit or fraudulently-represented aviation part or material; or

>   (B)   knowingly, and with the intent to defraud, carried out or facilitated an activity punishable under a law described in paragraph (1)(A).

49 U.S.C. § 44726(b)(1)(A)-(B). The typical section 44726 case works one of two ways. If a prosecutor acts first and obtains a conviction, the FAA is obligated by subsection (A) permanently to revoke any certificates. *Id.* § 44726(b)(1)(A). Alternatively, if the agency acts first and makes an administrative determination of certain criminally punishable fraud, subsection (B) requires permanent revocation. *Id.* § 44726(b)(1)(B). After agency action, the individual may still be prosecuted criminally but, ordinarily, no further revocation action is needed because any earlier revocation under subsection (B) will have already accomplished permanent revocation.

This case is anomalous because an FAA enforcement attorney, on the one hand, and a prosecutor and a jury, on the other, differed in their respective assessments of the case. Lauterbach's sale of fraudulent parts thus prompted a remedial response that proceeded in two administrative steps rather than the usual single step: (1) an agency effort to obtain permanent revocation under subsection (B) that it agreed to settle for a temporary revocation (the 2006 settlement); and (2) another agency order requiring permanent revocation, this time under subsection (A) in response to a criminal conviction years later (the 2013 Order). Lauterbach raises no challenge to the first administrative proceeding and subsequent criminal action. Nor does he dispute that his conviction under 18 U.S.C. § 38 qualifies as a violation capable of triggering revocation under section 44726(b)(1)(A). He takes issue only with the second administrative action, in 2013.

There is some surface appeal to Lauterbach's argument that the 2013 administrative proceeding unfairly gave the FAA a second chance to accomplish what it was unable or unwilling to do the first time: revoke Lauterbach's certificates permanently. Indeed, claim preclusion ordinarily bars successive proceedings by administrative as well as judicial tribunals where, as here, the proceedings bear the hallmarks of adjudication. *See Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 490 n.14 (2004); Restatement (Second) of Judgments § 83 (1982). In such administrative settings, as in judicial proceedings, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action," *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)), *i.e.*, where the two actions "share the same 'nucleus of facts,'" *id.* (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). Thus, *res judicata* generally prevents parties "from relitigating issues that were or could have been raised" in a prior action. *Id.* (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)) (emphasis omitted). But the presumption of administrative estoppel is "properly accorded sway only upon legislative default, applying where Congress has failed expressly or impliedly to evince any intention on the issue." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110 (1991); *see* Restatement (Second) of Judgments § 83 cmt. a (1982).

Claim preclusion poses no barrier to the FAA fulfilling its subsection (A) revocation obligation based on specified types of criminal conviction even after it has proceeded administratively under subsection (B). In subsection (A), Congress required revocation in response to a qualifying conviction, without more. In subsection (B), Congress required revocation upon agency investigation and proof of

underlying facts. The authorizations under each subsection are separated by the disjunctive "or"; each type of substantive determination constitutes a separate basis for revocation, even if the underlying misconduct is the same.

The statute nowhere suggests that a determination by the agency under subsection (B) could have any preclusive effect on post-conviction revocation under subsection (A). That absence is especially notable insofar as Congress expressly contemplated the interplay of the two provisions, specifying that an acquittal bars an administrative revocation under subsection (B), *see* 49 U.S.C. § 44726(e)(1), and that an acquittal or a reversal of a conviction also permits the agency to reissue revoked certificates, *id.* § 44726(e)(2)(B). Congress further provided that, in the case of a conviction, the agency may not revisit "whether a person violated a law described in paragraph (1)(A)." *Id.* § 44726(b)(2). In contrast to those directions about how the different provisions interact, nothing in the statute prevents criminal prosecution for fraud—with its corresponding certificate revocation under subsection (A)—after an administrative determination of fraud.

Section 44726's automatic post-conviction revocation requirement makes sense in light of the statute's protective purpose. Congress enacted the provisions at issue as part of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181, § 505(a)(1), 114 Stat. 61, 134-35 (2000), to "safeguard United States aircraft, workers and passengers from fraudulent, defective, and counterfeit aircraft parts," a problem that had "grown dramatically in recent years" and that "could cause a horrific airplane tragedy," even where only small defective parts were involved. 146 Cong. Rec. S1255-01 (Mar. 8, 2000)

(statement of Sen. Leahy).[1] If accepted, Lauterbach's argument would allow individuals convicted of trading in counterfeit or fraudulently represented aircraft parts to reenter the aviation industry as certified pilots and mechanics. Lauterbach would have us read the statute to require the agency to countenance that result, simply because the agency had earlier, perhaps with less investigation, come to a different conclusion from the convicting jury. We cannot accept that reading, and principles of preclusion do not require us to do so.

The FAA thus permissibly initiated successive proceedings against Lauterbach in 2006 and, in light of Lauterbach's intervening criminal conviction, again in 2013. While allegations detailing Lauterbach's fraudulent actions in 2005 and 2006 supported the initial administrative action and settlement, the operative fact underlying the 2013 subsection (A) claim was Lauterbach's 2011 conviction. That conviction had not yet occurred when the FAA issued its initial order against Lauterbach in 2006. Because the FAA could not have brought a subsection (A) claim in 2006, dismissal of the 2006 Order did not preclude its 2013 Order. *See Drake*, 291 F.3d at 66 (holding that *res judicata* was unavailable where "many of the central events underlying" the second action had "not even taken place" when the petitioner instigated the first action); *Page*, 729 F.2d at 820 (holding that, because plaintiff "could not have asserted claims based on facts that were not yet in existence," *res judicata* was inapplicable to conduct postdating previous adjudication).

---

[1] *See also id.* (explaining that bill's civil remedies were designed "to prevent repeat offenders from re-entering the aircraft parts business"); 146 Cong. Rec. S1255-01, Ex. 1 (Mar. 8, 2000) (statement of Sen. Hatch) (explaining that bill "authorizes . . . civil remedies to stop offenders from re-entering the business").

Lauterbach's other preclusion arguments fare no better. Collateral estoppel, or issue preclusion, does not apply because, among other things, settlements like the one resolving the FAA's 2006 order "ordinarily occasion no issue preclusion . . . unless it is clear, as it is not here, that the parties intend their agreement to have such an effect." *Arizona v. California*, 530 U.S. 392, 414, *supplemented*, 531 U.S. 1 (2000) (emphasis omitted). No issues were "actually litigated" or "actually and necessarily determined by a court of competent jurisdiction" in 2006 so as to bar their purported relitigation in 2013. *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Likewise, "[a] settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel." *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980); *cf. id.* (concluding that judicial estoppel was unavailable because "[s]ettlement approval does not signify a [Maryland Worker's Compensation] Commission endorsement of either party's position").

Finally, Lauterbach suggests the 2006 and 2013 FAA orders imposed multiple punishments in violation of at least the spirit of the Fifth Amendment's Double Jeopardy and Due Process Clauses. As Lauterbach appears to acknowledge, however, the protection against double jeopardy ordinarily does not apply to civil proceedings. That protection is inapplicable here because permanent certificate revocation under section 44726(b)(1)(A) is not a criminal sanction designed to punish a certificate holder. *See Hudson v. United States*, 522 U.S. 93, 99 (1997) ("The Clause protects only against the imposition of multiple *criminal* punishments for the same offense . . . in successive proceedings." (internal citations omitted)). Revocation under subsection (A) is a civil

administrative measure designed to protect aviation safety from the significant threats posed by counterfeit and fraudulently represented aircraft parts, separate and apart from criminal sanctions meted out in punishment for handling such parts. *See, e.g.*, 18 U.S.C. § 38(b); *cf. Zukas v. Hinson*, 124 F.3d 1407, 1412-13 (11th Cir. 1997) (deeming non-punitive for double jeopardy purposes the permanent revocation of an airman certificate under 49 U.S.C. § 44170(b) for a controlled-substance conviction, because the purpose of the statute's revocation provision, as confirmed by legislative history, was "remedial," designed to "ensure air safety by removing an unqualified pilot from the ranks of those who hold pilot certificates").

Lauterbach's due process argument "is nothing more than his double-jeopardy claim in different clothing." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 116 (2003). His various claims, which individually lack merit, are no more persuasive in combination. Congress authorized permanent, post-conviction revocation of airman certificates to protect aviation safety. There is nothing fundamentally unfair about that result.

\* \* \*

Accordingly, we deny the petition for review of the NTSB order reinstating the FAA's permanent revocation order under 49 U.S.C. § 44726(b)(1)(A).

*So ordered.*