Kenneth W. SKEEN, Plaintiff,

v.

**FEDERATIVE REPUBLIC OF BRAZIL, Defendant.**

Civ. A. No. 82–3504.

United States District Court, District of Columbia.

July 7, 1983.

John P. Coale, George G. Misko, Washington, D.C., for plaintiff.

J.P. Janetatos, Baker & McKenzie, Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

This case is presently before the Court on the question of subject matter jurisdiction. Although defendant has not filed a formal

motion to dismiss,[1] the case is now in a posture requiring the Court to consider, *sua sponte,* whether it in fact has jurisdiction over the subject matter of this action.

The factual basis of plaintiff's complaint is quite simple. Plaintiff alleges that on November 29, 1982, Antonio Francisco da Silveira, Jr., the grandson of defendant's ambassador to the United States, assaulted and shot him outside a local nightclub. On December 9, 1982, plaintiff filed suit in this Court against da Silveira, Jr., his grandfather, and the Federative Republic of Brazil. Plaintiff had some difficulty in effective service, but on May 17, 1983, his counsel appeared before the Court and represented that service had been completed and that the statutory time for defendants to respond had elapsed. 28 U.S.C. § 1608(d).

At the status conference on May 17, 1983, the Court asked plaintiff's counsel about a certification filed by the United States Department of State on March 29, 1983, attesting that Ambassador da Silveira had been duly notified to the State Department as Brazil's ambassador and that hence both the ambassador and his family were entitled to full diplomatic immunity under the provisions of the Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227, T.I. A.S. 7502, 500 U.N.T.S. 95, to which the United States is a party. At the status conference, counsel for plaintiff admitted that the representations of the State Department were essentially correct, and with plaintiff's consent the Court dismissed the action against the individual defendants in an Order filed May 17, 1983. 22 U.S.C. § 254d.

Also appearing at the status conference on May 17, 1983, was J.P. Janetatos, Esq., who stated to the Court that he did not intend to enter a formal appearance,[2] but that he represented defendant Brazil. At the invitation of the Court, Mr. Janetatos filed a "Memorandum of Counsel" on the subject of the Court's jurisdiction on May 31, 1983. Counsel for plaintiff responded on June 21, 1983.

Plaintiff seeks to invoke this Court's jurisdiction under 28 U.S.C. § 1330, the jurisdictional provision of the Foreign Sovereign Immunities Act (FSIA). Section 1330 gives the Court jurisdiction over any action against a foreign state in which "the foreign state is not entitled to immunity." *See* 28 U.S.C. § 1604. The particular exception to the general rule of sovereign immunity that plaintiff seeks to invoke here is that of 28 U.S.C. § 1605(a)(5), which states that a foreign state shall not be immune from suit in a case

> in which money damages are sought against a foreign state for personal injury ... occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment.

As plaintiff points out, there is some indication in the legislative history of this provision that Congress intended it to provide some protection to U.S. citizens who were injured as a result of the tortious conduct of diplomatically immune foreign representatives. H.Rep. No. 1487, 94th Cong.2d Sess. 20–21 (1976); S.Rep. No. 1310, 94th Cong., 2d Sess. 20–21 (1976), U.S.Code Cong. & Admin.News 1976, p. 6604. However, the legislative history gives no additional guidance on the proper application of this provision beyond the plain language of the statute itself.

Plaintiff asserts that § 1605(a)(5) applies to this situation, because, he argues, a diplomat's family, like the diplomat himself, is an employee or agent of the foreign

---

**1.** Defendant originally declined to enter a special appearance in this case, authorizing its counsel only to "request" that the Court dismiss the case *sua sponte.* In its "Response to Plaintiff's Reply Memorandum" filed June 30, 1983, however, defendant formally entered a special appearance for the sole purpose of contesting jurisdiction. 28 U.S.C. § 1330(c). The Court will treat defendant's Memorandum of Counsel filed before its appearance as equivalent to a motion to dismiss.

**2.** Mr. Janetatos did subsequently enter his appearance specially for the purpose of contesting jurisdiction on June 30, 1983.

government. Plaintiff points out that a diplomat's family members, although unpaid, are often indispensible to the sending state in such activities as attending diplomatic receptions, co-hosting embassy receptions, and participating in various intercultural activities. Plaintiff's argument implies that such activities provide the principal reason for the Vienna Convention's extension of diplomatic immunity to a diplomat's family. This is doubtful; plaintiff has suggested to the Court no precedent adopting such a position, and there is a strong argument that extension of diplomatic immunity to family members is a courtesy accorded to the diplomat rather than a recognition of any official status of the family members themselves. It is unnecessary to decide this point, however, because plaintiff's attempt to apply § 1605(a)(5) to this situation fails more clearly on another ground.

■ In order to invoke § 1605(a)(5) in this case, plaintiff must demonstrate that da Silveira's actions were "within the scope of his office or employment." Section 1605(a)(5) is essentially a respondeat superior statute, providing an employer (the foreign state) with liability for certain tortious acts of its employees.

■ The Supreme Court has recently held that the jurisdictional grant of FSIA is based upon the "arising under" provision of Article III³ rather than the diversity of citizenship provision. *Verlinden B.V. v. Central Bank of Nigeria,* —— U.S. ——, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). The Court held that federal interests in foreign affairs and regulation of foreign commerce

provide sufficient basis for federal jurisdiction in all cases against foreign states, including those that involve no substantive federal issues beyond the question of sovereign immunity. However, as a general rule, only the purely federal question of sovereign immunity is to be decided on the basis of federal law; "where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances." *First National City Bank v. Banco Para El Comercio Exterior De Cuba,* —— U.S. ——, —— n. 11, 103 S.Ct. 2591, 2597 n. 11, 77 L.Ed.2d 46 (1983); *see* 28 U.S.C. § 1606.⁴ Therefore, in deciding whether da Silveira's actions were "within the scope of his employment," 28 U.S.C. § 1605(a)(5), the Court looks to the applicable state law defining that concept. *Castro v. Saudi Arabia,* 510 F.Supp. 309, 313 (D.Tex.1980).

This is the choice of law rule applied under an analogous federal statute, the Federal Tort Claims Act (FTCA), which also provides for federal jurisdiction simply on the basis of the identity of the defendant, without regard to the existence of other federal issues in the case. Under the FTCA, the United States waives its sovereign immunity and accepts liability for the tortious acts of its officials committed within the scope of their employment.⁵ The statute indicates—and the courts have consistently held—that, with certain statutory exceptions, 28 U.S.C. § 2680, the definition of "scope of employment" under the FTCA must be determined by reference to state law.⁶ *Baker v. United States,* 230 F.2d 831

---

**3.** "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ."

**4.** The Supreme Court found, however, that an issue of allocation of liability *among* instrumentalities of a foreign state was beyond the scope of § 1606. —— U.S. at —— n. 11, 103 S.Ct. at 2597 n. 11. The Court therefore applied federal law on that question. No such allocational issue arises in this case, in which the state of Brazil is the sole defendant and none of its

corporate instrumentalities or political subdivisions has been sued.

**5.** The "extent of liability" provisions of the FSIA and FTCA are nearly identical. 28 U.S.C. §§ 1606, 2674.

**6.** There does not appear to be a federal common law defining "scope of employment" in the context of respondeat superior. *Compare First National City Bank, supra* (applying existing federal common law on corporate entity states). If such a federal common law definition did exist, however, it would presumably be

**1418**

(D.C.Cir.1956). In the absence of any indication of congressional intent to the contrary, the same rule should apply under the FSIA.

■ The District of Columbia's law of respondeat superior, which is similar to that of most states, is stated in the case of *Penn Central Transportation Company v. Reddick*, 398 A.2d 27 (D.C.1979). In that case, the D.C. Court of Appeals stated that, as a general rule,

> whatever is done by the employee in virtue of his employment and in furtherance of its ends is deemed by the law to be an act done within the scope of his employment, and ... in determining whether the servant's conduct was within the scope of his employment, it is proper to inquire whether he was at the time engaged in serving his master.

*Id.* at 29 (*quoting* 57 C.J.S. Master and Servant § 570d(2) (1948)). There are two ways in which an employee's acts may be outside the scope of his employment. First, the employee may simply be "off the job," pursuing his own business on his own time. Second, the act committed by the employee may be so far beyond the types of activities that the employer could foresee might be committed as a result of the employment that the employer will not be liable, even though the employee was actually "on the job." *Id.* at 30–31.

Plaintiff presents a strong case to meet the first point. He points out that, assuming *arguendo* that da Silveira, Jr., was in fact an agent or employee of defendant, it was a part of the peculiar nature of his situation that he was "on the job" 24 hours a day. He had the responsibility in all of his contacts with U.S. citizens to conduct himself in a manner that would put himself (and, through him, Brazil) in the best light. *Cf.* Vienna Convention on Diplomatic Relations Art. 41(1) (duty of persons enjoying diplomatic immunity to respect laws of re-

ceiving state). Socializing at a local nightclub might not be the kind of "social" activity that a state expects its diplomats to pursue, but da Silveira did not cease to be a diplomat for that reason alone.[7]

However, it is more difficult to argue that da Silveira was acting within the scope of his employment when he shot plaintiff. Assault and battery are intentional torts of an employee for which his employer has not traditionally been held liable at common law. Modern courts, including D.C. Court of Appeals, have carved out a general exception to this principle for torts that are "the outgrowth of a job related controversy." *Penn Central Transportation Co.*, 398 A.2d at 30. However, when the intentional tort is an act done for purely personal reasons, and not in furtherance of the employer's business, the employer cannot be held liable.

■ The issue as to whether a tort was committed within the scope of the employee's employment is generally a question of fact for the jury. *Johnson v. Weinberg*, 434 A.2d 404 (D.C.1981). "However, when all reasonable triers of fact must conclude that the servant's act was independent of the master's business and solely for the servant's personal benefit, then the issue becomes a question of law." *Penn Central Transportation Co.*, 398 A.2d at 32. In this case, it is clear, even accepting plaintiff's complaint at face value, that da Silveira's assault upon plaintiff was purely personal in nature. His assault upon plaintiff in no way furthered defendant's interests; nor could defendant have reasonably foreseen that his actions might have occurred as a natural result of his employment. Just as a railroad company cannot be held liable for a brakeman's assault upon a taxicab driver, *id.;* so Brazil cannot be held liable simply because its diplomatic representative unexpectedly shot someone in a nightclub. *Cf.* 28 U.S.C. § 2680(h) (assault committed by official other than law enforcement officer

---

the same as that currently prevailing in most states and the District of Columbia.

**7.** The presumption that da Silveira's "job" as a diplomat was ongoing at the time of the inci-

dent is borne out by the fact that diplomatic immunity was claimed for him for the actions he took at that time.

not actionable under Federal Tort Claims Act).

This case is easily distinguished from *Letelier v. Republic of Chile,* 488 F.Supp. 665 (D.D.C.1980). In that case, Judge Joyce Hens Green found that she had subject matter jurisdiction over a case in which the personal representatives of a Chilean dissident who had been killed in Washington, D.C., alleged that his killers acted at the direction of the Chilean government. Here there is no allegation that the Brazilian government directed da Silveira to assault plaintiff or even expected him to do so. Nor were da Silveira's actions a foreseeable result of his alleged employment by defendant. This case is thus distinguishable from another case cited by plaintiff, *Marusa v. District of Columbia,* 484 F.2d 828 (D.C.Cir. 1973), in which the D.C. Circuit found that the District of Columbia government could be held liable for an off-duty shooting by one of its police officers. The court expressly found in that case that the officer's tort "was made possible only through the use of his service revolver," which he was required to carry at all times. *Id.* at 831. The assault alleged in *Marusa* was therefore a foreseeable result of the District's employment of the officer. Defendant here had no similar reason to foresee that an assault might arise from its employment of diplomatic agents.

■ Plaintiff alleges one additional ground for imposing liability on defendant here. Plaintiff asserts that defendant is liable, under a theory of respondeat superior, for the failure of its ambassador, da Silveira, Sr., to prevent his grandson from committing the assault. There is no general duty in tort law to control the conduct of third persons. Restatement (Second) of Torts § 315. There is an exception, however, for a situation in which "a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." *Id.* Plaintiff asserts that Ambassador da Silveira had such a special duty in this case in his joint capacity as head of his family and head of the diplomatic mission.

■ The exception to the general rule of no duty to control third persons is not triggered by a mere family relationship. Section 316 of the Restatement recognizes a duty of a parent to control certain actions of his minor child, but even that duty is quite narrow. *See, e.g., Lanterman v. Wilson,* 277 Md. 364, 354 A.2d 432 (1976). At the very most, the parent has a duty to control the child's behavior when he has the opportunity and ability to control the child at the time of the tort. Restatement § 316(b) & comment b. Even this rule does not extend to cover the actions of offspring who are no longer minors.

■ The other ground plaintiff alleges for a duty on the ambassador to control his grandson's actions is also insufficient. Plaintiff asserts that the duty imposed by Article 41(1) of the Vienna Convention "to respect the laws and regulations of the receiving State" imposes a special duty on the ambassador, as head of the diplomatic mission, to control the actions of members of the mission. However, there is no express provision for such a duty in the Vienna Convention or the Foreign Sovereign Immunities Act. *See also* Senate Exec.Rep. No. 6, 89th Cong. 1st Sess. 7–8 (1965) (recommending ratification of the Vienna Convention by the United States). Failure of an ambassador to control the actions of members of the mission could presumably be the basis for diplomatic action by the State Department seeking compensation for the victim or even a *persona non grata* declaration under Article 3 of the Vienna Convention, but nothing in the language of the Vienna Convention or any other international agreement cited by plaintiff supports the creation of the privately enforceable specific duty advocated by plaintiff. In the absence of such a legally enforceable duty on the ambassador, Brazil cannot be held liable in this case.

■ Assuming the facts alleged in plaintiff's complaint to be true, as the Court must in considering dismissal at this stage, it appears that plaintiff may indeed have suffered a wrong. However, this Court's

jurisdiction to redress such a wrong cannot extend beyond that permitted by Congress. U.S. Const. Art. III. In ratifying the Vienna Convention and in enacting the FSIA, Congress and the President have made the general judgment that overriding policy considerations require the granting and/or recognition of immunity in certain situations to foreign states, their diplomatic representatives, and members of the representatives' families. This is such a situation, and the Court is bound to respect that considered policy judgment of the Executive and Legislature. Accordingly, an accompanying Order will dismiss plaintiff's complaint for lack of jurisdiction over the subject matter.