**Charles MORGAN, Plaintiff,**

**v.**

**The INTERNATIONAL BANK FOR RECONSTRUCTION AND DEVELOPMENT, Defendant.**

**Civ. A. No. 90–0929.**

United States District Court, District of Columbia.

Sept. 13, 1990.

Forrest A. Hainline, III, Washington, D.C., for plaintiff.

Richard James Oparil, Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

Defendant (the "World Bank") moves to dismiss the complaint, and plaintiff Charles Morgan opposes. The motion has been fully briefed.

Morgan is an employee of Going Places, a temporary employment agency. For the past two and one half years, Morgan has been placed in a secretarial position at the World Bank, where he works in other respects as a directly-hired employee. The complaint alleges conduct by Bank employees that would indicate a most serious infringement of an employee's rights. It is alleged that in late 1989 Bank officials and security guards forcibly detained Morgan against his will and denied him access to an attorney, accused him of stealing money

without presenting any evidence, and subsequently made unwarranted threats in the course of continuing harassment. He seeks compensatory and punitive damages for intentional infliction of emotional distress, false imprisonment, libel and slander. The World Bank asserts that it is immune from suit under these distressing circumstances.

While the Court is well aware that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief, *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), precedent requires that the motion be granted, thus depriving Morgan of any opportunity for redress through the courts.

Pursuant to applicable statutory provisions, *see* International Organizations Immunities Act, 22 U.S.C. § 288 *et seq.*, Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, and principles of international law, international organizations such as the World Bank are, absent waiver, absolutely immune from suits arising out their internal operations. *See Mendaro v. World Bank*, 717 F.2d 610 (D.C.Cir.1983); *Tuck v. Pan American Health Organization*, 668 F.2d 547 (D.C.Cir.1981); *Broadbent v. Organization of American States*, 628 F.2d 27 (D.C.Cir.1980). Decisions in this Circuit have uniformly upheld immunity in cases involving relations between an international organization and its employees. *See* cases cited *supra; Chiriboga v. International Bank for Reconstruction and Development*, 616 F.Supp. 963 (D.D.C.1985); *Novak v. World Bank*, Civil Action No. 81–1329 (D.D.C. Dec. 21, 1983).

Article VII, Section 3 of the World Bank's Articles of Agreement has been held to constitute a waiver of immunity only from those suits "arising out of its external commercial contracts and activities." *Mendaro*, 717 F.2d at 618. Morgan argues that the World Bank's decision to hire a temporary worker provided by an outside agency is akin to employing a contractor to make repairs or perform con-

struction work and that the waiver provision of Article VII, Section 3 applies, and in addition such a commercial activity also falls within exceptions codified in the Foreign Sovereign Immunities Act at 28 U.S.C. § 1605(a)(2), thus permitting Morgan to maintain this action.

■ The waiver provision of Article VII, Section 3, although broad on its face, "must be narrowly read in light of both national and international law governing the immunity of international organizations." *Mendaro*, 717 F.2d at 611. In *Mendaro* the Court of Appeals stated that when the waiver provision is considered with reference to the purposes of international immunities it cannot be read to cover employee grievances. The Court stated:

> it is evident that the World Bank's members could only have intended to waive the Bank's immunity from suits by its debtors, creditors, bondholders, and those other potential plaintiffs to whom the Bank would have to subject itself to suit in order to achieve its chartered objectives. Since a waiver of immunity from employees suits arising out of internal administrative grievances is not necessary for the Bank to perform its functions, and could severely hamper its worldwide operations, this immunity is preserved by the members' failure expressly to waive it.

*Id.* at 615.

Thus employee relations of any kind cannot be the subject of litigation against the Bank. The Court of Appeals noted that, absent immunity, the World Bank's internal employment relationships would be subjected to the employment laws of each host country in which the Bank operates. *Id.* at 618–19. This position was specifically distinguished from claims by vendors of office equipment and supplies who like other outside parties may press claims against the Bank under its immunity waiver. *Id.* at 618.

■ The same concerns are applicable in determining whether Morgan's claims fall within the "commercial activity" exception to immunity pursuant to the FSIA, assuming *arguendo* that the restrictive immunity standard of that act, rather than the absolute immunity of international organizations, applies to the World Bank, an issue not resolved in this Circuit. *See Broadbent*, 628 F.2d at 31–33; *Tuck*, 668 F.2d at 550. Under the FSIA, immunity is the rule rather than the exception. *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 919 (D.C.Cir.1987). Morgan's claims arise directly from the World Bank's employment practices, which do not constitute "commercial activity" within the meaning of the statute. *See Broadbent*, 628 F.2d at 33–36; *Tuck*, 668 F.2d at 550.

That the present suit concerns an employment relationship cannot be questioned. The complaint presents no claim by the contracting employment agency, only the tort grievances of an individual who has been assigned for a substantial period as a regular World Bank staff member. Morgan attacks the Bank's handling of its internal investigation into cash allegedly stolen from one of the offices at its headquarters. Bank guards and officials allegedly detained Morgan, questioned him about personal details, denied access to counsel, failed to show cause, questioned his colleagues about him, placed him under surveillance in-house, caused a coworker to believe that Morgan had been fired for stealing money and gave conflicting signals as to whether he would receive a letter of exoneration. This alleged course of conduct arose directly from Morgan's work at his job. Accordingly, the fact that Morgan is not in all respects formally an employee of the Bank but serves on detail from his agency is of no legal consequence. Morgan's suit, if allowed to proceed, would force the Bank to defend internal employment practices traditionally shielded by immunity. That the conduct of Bank officials may have been improper is irrelevant.

■ Moreover, even if the FSIA was held to apply, the Act's tort exception, 28 U.S.C. section 1605(a)(5), provides no basis for proceeding, as Morgan urges. By its own terms, the tort exception does not pierce immunity for two of the complaint's four counts, those alleging libel and slan-

der. 28 U.S.C. section 1605(a)(5)(B). The remaining counts, for false imprisonment and intentional infliction of emotional distress, are foreclosed in this instance by the "discretionary function" exemption of the FSIA, at 28 U.S.C. § 1605(a)(5)(A).

That section provides that immunity attaches for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." In *MacArthur Area Citizens Ass'n, supra,* the Court of Appeals addressed the scope of the FSIA discretionary function exemption to the tort exception in light of the Supreme Court's decision in *United States v. S.A. Empresa De Viacao Aerea Rio Grandense,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), which dealt with a similar discretionary function provision in the Federal Tort Claims Act. It first noted the tort exception itself was to be interpreted narrowly: "[A]lthough cast in general terms, the 'tortious act' exception was designed primarily to remove immunity for cases arising from traffic accidents.... [T]he exception should be narrowly construed so as not to encompass the farthest reaches of common law." 809 F.2d at 921. It then held that the discretionary function exemption shields decisions "which involve a measure of policy judgment," 809 F.2d at 922 (quoting *Red Lake Band of Chippewa Indians v. United States,* 800 F.2d 1187, 1196 (D.C. Cir.1986), stating that it is "the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* (quoting *Varig,* 467 U.S. at 813, 104 S.Ct. at 2764).

Applying this analysis, the Court of Appeals concluded that the government of Peru's decision to purchase a building and then modifying the building by, for example, "employ[ing] specific security arrangements," such as installing a burglar alarm, were shielded—against a suit by neighbors alleging zoning violations—by FSIA immunity "as decisions made in the execution or implementation of a discretionary policy or activity, namely, establishing a chancery for the Naval Attache in the District of Columbia." 809 F.2d at 922–23. "Implementing actions" such as those at issue in the case were protected by immunity so long as they "involve the exercise of policy judgment." 809 F.2d at 923.

The present complaint alleges not a mere scuffle with guards but a continuous process of investigation into missing money which involved the participation of higher level World Bank security and Ethics Department officials. The alleged false imprisonment and intentional infliction of emotional distress clearly involved the exercise of policy judgment. According to the complaint Morgan was singled out, detained, and extensively questioned, and there was strong indication that Morgan's supervisor knew in advance that security personnel would be questioning Morgan. It is also clear from the complaint that Morgan's treatment after the first incident was monitored and guided by World Bank higher-ups. In these circumstances, classifying such an effort as non-discretionary would undermine the principle, approved again and again in this Circuit in the cases cited *supra,* that shields international organizations from liability with respect to internal personnel actions such as the World Bank's treatment of Morgan.

Accordingly, the complaint must be dismissed.