Margot RENDALL–SPERANZA,
Plaintiff,

v.

Edward A. NASSIM, Defendant.

Civil Action No. 95–01855.

United States District Court,
District of Columbia.

March 18, 1996.

See also 932 F.Supp. 19.

David H. Shapiro of Swick & Shapiro, P.C., Washington, DC, for Plaintiff.

James R. Myers and Jana Howard Carey of Venable, Baetjer, Howard & Civiletti, L.L.P., Washington, DC, for Defendant.

Lester Nurick, Thomas P. Olson and Gregorio B. Cater of Wilmer, Cutler & Pickering, Washington, DC, for Amicus Curiae.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court in the above-entitled case are the defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, and the plaintiff's Opposition; the plaintiff's Motion for Leave to File an Amended Complaint and the defendant's Opposition; and a motion by *amicus curiae* the International Finance Corporation ("IFC") for Leave to File a Supplemental Brief. Upon careful consideration of the parties' pleadings and the law applicable thereto, and for the reasons expressed below, the Court shall grant the defendant's Motion to Dismiss with respect to the plaintiff's claim of assault and battery based on the incidents occurring before August 24, 1994, and shall otherwise deny the defendant's Motion to Dismiss. Also, the Court shall deny the defendant's Motion for Summary Judgment, grant the plaintiff's Motion for Leave to File an Amended Complaint and grant the IFC's Motion for Leave to file a Supplemental Brief.

### BACKGROUND

The plaintiff in the above-entitled case is a Maryland resident. She began working for the World Bank in October 1992 as an investment officer in the IFC division. At that time, the defendant, a District of Columbia resident, was the Director of the Europe Department of the IFC and, in that capacity, he was the plaintiff's supervisor. Amend. Compl. ¶¶ 2–4. In her Amended Complaint, the plaintiff alleges that, from the inception of her employment with The World Bank/ IFC, the defendant has subjected her to "pervasive unwelcomed [sic], harassing, demeaning and humiliating language and physical contacts ... in order to pressure plaintiff emotionally into engaging in sexual activity with him." *Id.* ¶ 5.

More specifically, the plaintiff alleges that, on at least nine separate occasions on or between the dates of May 26, 1992 and August 25, 1994, the plaintiff touched her in an offensive manner, despite her clear indications that such contact was unwelcome. *Id.* ¶¶ 6–15. On one occasion, after the plaintiff had complained to her employer, the defendant allegedly shook his fist in the plaintiff's face. *Id.* ¶ 14. Finally, on the evening of August 25, 1994, at the World Bank offices in

Washington, D.C., the plaintiff alleges that the defendant grabbed her at the wrists, twisted her right arm behind her back, and kicked her with his foot in her left shin. *Id.* ¶ 15. The defendant alleges that this latest incident occurred when he discovered the plaintiff trespassing in his office. Def. Mot. to Dismiss at 1.

On August 24, 1995, the plaintiff filed suit against the defendant in the Superior Court of the District of Columbia. The plaintiff did not demand a jury trial. On September 28, 1995, the defendant notified the plaintiff that he had removed the suit to this Court pursuant to 28 U.S.C. § 1441. The plaintiff filed an Amended Complaint on December 11, 1995, requesting a trial by jury. Count I of the Amended Complaint alleges assault and battery; Count II alleges intentional infliction of emotional distress.

On January 17, 1996, the defendant filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).[1] The defendant asserts that, with the exception of the incident that occurred on August 25, 1994, the plaintiff's claims of assault and battery and intentional infliction of emotional distress are time-barred under the applicable one-year statute of limitations; that any claim based on the August 25, 1994 incident is barred by the immunity applicable pursuant to the International Organizations Immunities Act, 22 U.S.C. § 288; that the acts alleged are insufficient as a matter of law to state a claim of intentional infliction of emotional distress; and that the plaintiff's jury demand is untimely. On January 26, 1996, the IFC sought leave to file an *amicus curiae* brief, which the Court granted. On February 12, 1996, the plaintiff filed an Opposition to the defendant's Motion to Dismiss and also a Motion for Leave to File an Amended Complaint, seeking to add the IFC as a defendant. On February 22, 1996, the defendant filed a Reply. On February 23, 1996, the IFC filed a Motion for Leave to File a Supplemental *Amicus Curiae* Brief, asserting

that it is immune from suit in the above-entitled case.

## DISCUSSION

Pursuant to Rule 12(b)(1), the Court must dismiss a claim if the Court lacks subject matter jurisdiction over that claim. Fed. R.Civ.P. 12(b)(1). Under Rule 12(b)(6), a claim must be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In evaluating the plaintiff's complaint on a motion to dismiss, the Court must accept the factual allegations as true and draw all reasonable inferences therefrom in favor of the plaintiff. *Maljack Productions, Inc. v. Motion Picture Ass'n of Am., Inc.,* 52 F.3d 373, 375 (D.C.Cir.1996).

**I. THE PLAINTIFF'S CLAIM OF ASSAULT AND BATTERY BASED ON THE INCIDENTS OCCURRING BEFORE AUGUST 24, 1994 IS TIME–BARRED UNDER THE APPLICABLE ONE–YEAR STATUTE OF LIMITATIONS; THE PLAINTIFF'S CLAIM OF ASSAULT AND BATTERY BASED ON THE AUGUST 25, 1994 INCIDENT IS NOT TIME–BARRED; AND THE PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS NOT TIME–BARRED BY VIRTUE OF THE "CONTINUING TORT DOCTRINE."**

The defendant asserts that, with the exception of the incident occurring on August 25, 1994, the plaintiff's claims for assault and battery and intentional infliction of emotional distress are time-barred by the District of Columbia's one-year statute of limitations, as set forth in the D.C.Code § 12–301(4). The plaintiff counters that the actions complained of comprise a series of similar events that constitute a "continuing pattern," which allegedly tolls the running of the statutory

---

1. In his Reply Brief, the defendant moves, in the alternative, for summary judgment. If matters outside the pleadings are presented to and not excluded by the Court, a Rule 12(b)(6) motion is treated as one for summary judgment under Rule 56. Fed.R.Civ.P. 12. The extant motions are decided on the pleadings.

period. The plaintiff also argues that the statute of limitations for a claim of intentional infliction of emotional distress is three years rather than one year. Under applicable District of Columbia law, the Court concludes that a one-year statute of limitations applies for both the plaintiff's claim of assault and battery and for her claim of intentional infliction of emotional distress; however, pursuant to the "continuing tort doctrine," the time period for the plaintiff's emotional distress claim did not begin to run until August 25, 1994; thus, that claim is timely.

■ The statute of limitations governing common law tort claims is determined by the applicable law of the forum. *See Gilson v. Republic of Ireland,* 682 F.2d 1022, 1024–25 n. 7 (D.C.Cir.1982). Under the D.C.Code, an action for assault or battery may not be brought after the expiration of a one-year period from the time the right to maintain the action accrues. D.C.Code § 12–301(4); *Hunter v. District of Columbia,* 943 F.2d 69, 72 (D.C.Cir.1991). Since the plaintiff filed her Complaint in the D.C. Superior Court on August 24, 1995, any assault and battery claims based upon incidents that occurred before August 24, 1994 are time-barred and will therefore be dismissed. This leaves the one alleged incident that occurred on August 25, 1994, upon which the plaintiff may base her claim of assault and battery.

■ Under the D.C.Code, absent a specifically prescribed statute of limitations for a claim, the time period by which that claim must be brought is three years. D.C.Code § 12–301(8). While this three-year limitation applies to an emotional distress claim when the claim is intertwined with claims that also fall within the three-year limitation, *Burda v. National Ass'n of Postal Suprvrs.,* 592 F.Supp. 273, 281 (D.D.C.1984), *aff'd,* 771 F.2d 1555 (D.C.Cir.1985), when the plaintiff has alleged the same acts to support both a claim for assault and battery and a claim for intentional infliction of emotional distress, as the plaintiff does in the case at bar, the statute of limitations for both claims is the one-year time period applicable to her assault and battery claim. *Scales v. George Washington Univ.,* Civ. No. 89–0796, 1991 WL 257975, *4–5 (D.D.C. Nov. 18, 1991), *aff'd,* 44 F.3d

1031 (D.C.Cir.1994) (per curiam), *cert. denied,* — U.S. ——, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995).

■ When a tort involves a continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases. *Page v. United States,* 729 F.2d 818, 821 (D.C.Cir.1984). The continuing tort doctrine, "[a]lthough ... most commonly applied when the acts are 'by nature of a repetitive character and [when] ... no single act can be identified as the cause of significant harm,' ... is not limited to such circumstances." *Rochon v. Federal Bureau of Investigation,* 691 F.Supp. 1548, 1563 (D.D.C.1988) (quoting *Pope v. Bond,* 641 F.Supp. 489, 496 (D.D.C.1986)); *see Page,* 729 F.2d at 818 (and cases cited therein). Rather, the doctrine can apply when the harms alleged flow not from the defendant's individual actions, but from the "cumulative and synergistic" effect of the defendant's allegedly wrongful conduct. *Id.* (recognizing continuing torts of intentional infliction of emotional distress, invasion of privacy, and negligence).

■ Here, although each individual instance of alleged assault and battery gave rise to a separate claim of assault and battery and, perhaps, to a separate claim of intentional infliction of emotional distress, the cumulative and synergistic effect of the alleged actions also gives rise to a claim of a continuing tort of intentional infliction of emotional distress. Under the continuing tort doctrine, the date that the limitations period began to run in the present case is August 25, 1994, the date of the last alleged tortious act. Accordingly, the plaintiff's claim of intentional infliction of emotional distress based on the cumulative effect of all the alleged incidents is not time-barred.

## II. NEITHER THE DEFENDANT MR. NASSIM IS IMMUNE FROM SUIT, NOR IS THE IFC IMMUNE FROM SUIT FOR THE AUGUST 25, 1994 INCIDENT.

The plaintiff has moved to amend her complaint to add the IFC as a defendant. The IFC opposes the plaintiff's motion, claiming

that principles of immunity bar suit by its employees involving the IFC's "internal operations and administrative matters." The defendant Mr. Nassim alleges that he is immune from suit as well by virtue of his status as an employee of the IFC.

Under the International Organizations Privileges and Immunities Act, international organizations such as the IFC "enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments...." 22 U.S.C. § 288a(b); *see* Exec.Ord. No. 10680, Oct. 2, 1956, 21 F.R. 7647. Likewise, officers and employees of such organizations are immune from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as officers or employees except insofar as such immunity may be waived by the organization concerned. 22 U.S.C. § 288d(b).

■ The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605, provides the sole basis for obtaining jurisdiction over a foreign government in a United States court. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443, 109 S.Ct. 683, 693, 102 L.Ed.2d 818 (1989). The FSIA limits the extent of immunity enjoyed by foreign states. One of the enumerated exceptions to immunity relates to actions

> in which money damages are sought against a foreign state for personal injury or death, ... occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except [for] any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless whether the discretion be abused....

28 U.S.C. § 1605(a)(5). Section 1605(a)(5) is essentially a *respondeat superior* statute, providing an employer with liability for certain tortious acts of its employees. *Skeen v. Federative Republic of Brazil*, 566 F.Supp. 1414, 1417 (D.D.C.1983).

The plaintiff here seeks damages for personal injury occurring in the District of Columbia and caused by the alleged tortious act of Mr. Nassim, an employee of IFC. In order for § 1605(a)(5) to provide a basis of jurisdiction over this case, it must first be demonstrated that Mr. Nassim's actions were "within the scope of his office or employment." *Id.*

■ Under the District of Columbia's law of *respondeat superior*, there are two ways in which an employee's acts may be outside the scope of his employment. *Penn Central Transp. Co. v. Reddick*, 398 A.2d 27 (D.C. 1979). First, the employee may simply be "off the job," pursuing personal business on personal time. Second, the act committed by the employee may be so far beyond the types of activities that the employer could foresee might be committed as a result of the employment that the employer will not be liable, even though the employee was actually "on the job." *Penn Central*, 398 A.2d at 30–31.

■ The issue as to whether a tort was committed "within the scope of employment" is generally a question of fact for the jury. *Johnson v. Weinberg*, 434 A.2d 404 (D.C. 1981). However, when all reasonable triers of fact must conclude that the employee's act was independent of the employers' business and solely for the employee's personal benefit, then the issue is a question of law. *Penn Central*, 398 A.2d at 32. Here, Mr. Nassim's alleged assaults and batteries before August 25, 1994 can in no way be considered to have furthered the IFC's interests, nor could the IFC have reasonably foreseen that his actions might have occurred as a natural result of his employment. Thus, for the incidents occurring before August 25, 1994, Mr. Nassim cannot claim immunity pursuant to 22 U.S.C. § 288d(b) and the IFC has not waived its immunity pursuant to 28 U.S.C. § 1605(a)(5).

The August 25, 1994 incident is quite a different matter. Regarding that incident, both Mr. Nassim and the IFC admit that Mr. Nassim was acting in his official duties by taking "steps to protect the employee's offices from trespass and to protect the employee's files from tampering or theft." *See* Def. Reply at 21. Thus, in order for Mr. Nassim and the IFC to fall within the exception of the § 1605(a)(5) waiver of immunity, it

must be established that Mr. Nassim's actions constituted a "discretionary function" within the meaning of the FSIA. *See* 28 U.S.C. § 1605(a)(5).

In *MacArthur Area Citizens Ass'n v. Republic of Peru,* 809 F.2d 918 (D.C.Cir.1987), the Court of Appeals examined the "discretionary function" provision of the FSIA, and was guided by decisions construing the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680. *MacArthur,* 809 F.2d at 922 (FTCA contains an analogous "discretionary function" provision). As the *MacArthur* Court noted, the Supreme Court's most recent treatment of the FTCA's discretionary function exception construed the provision as intending to preserve immunity for "decisions grounded in social, economic, and political policy." *Id.* It is "the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* While the *MacArthur* court did not expressly decide whether criminal acts may not be considered "discretionary functions" within the meaning of § 1605(a)(5), it stated that case law buttressed that proposition. *Id.* at 922 n. 4.

Given the tenor of the *MacArthur* Court's discussion, the alleged actions of Mr. Nassim—that he grabbed the plaintiff's wrists, twisted her arm behind her back, and kicked her shin—cannot fairly be said to be a "discretionary function" within the meaning of the FSIA. Clearly, it was not a decision grounded in social, economic, or political policy.

The defendant and the IFC principally rely on *Mendaro v. World Bank,* 717 F.2d 610 (D.C.Cir.1983), and *Morgan v. International Bank for Reconstruction & Development,* 752 F.Supp. 492 (D.D.C.1990). However, *Mendaro* is inapposite and *Morgan* supports the plaintiff.

*Mendaro* addressed only the question whether the World Bank's Articles of Agreement waived its immunity to suit. The *Mendaro* Court expressly disclaimed an opinion regarding a waiver of immunity under the FSIA. *See* 717 F.2d 610, 618 & n. 54.

In *Morgan,* Bank officials and security guards "singled out, detained, and extensively questioned" an employee who was accused of stealing money from the World Bank. Relying on *MacArthur,* and cases cited therein, the Court examined the nature of the conduct involved to determine that such conduct fell within the discretionary function exception of the FSIA. Since the conduct at issue involved was "*not* a mere scuffle with guards[,] but a continuous process of investigation into missing money which involved the participated of higher level World Bank security and Ethics Department officials," the conduct "clearly involved the exercise of policy judgment." 752 F.Supp. at 495 (emphasis added). The conduct alleged in the instant case did not involve the participation of higher-ups at the IFC, as did the conduct at issue in *Morgan,* and is much more in the nature of a "scuffle with guards." *See Morgan,* 752 F.Supp. at 495. Neither the IFC nor Mr. Nassim are entitled to immunity under these circumstances. Accordingly, the Court shall deny the defendant's motion with respect to the August 25, 1994 incident, and the plaintiff shall be given leave to amend her complaint to add the IFC as a defendant in the above-entitled case with respect to that incident.

The IFC also argues that the plaintiff's sole remedy lies with the worker's compensation mechanisms of the World Bank Group pursuant to World Bank/IFC Staff Rule 6.11, § 11.01, which provides that "[t]he claim for compensation which a claimant may file under [worker's compensation] shall constitute an exclusive remedy against the Bank Group for any illness, injury, or death arising out of or in the course of the staff member's employment." In support, the IFC cites *Mitishen v. Otis Elevator Co.,* Civ. No. 89-2966, 1990 WL 141643 (D.D.C. Sep. 20, 1990). The Court does not agree.

First, *Mitishen* did not involve the Staff Rule invoked here; rather, *Mitishen* examined the Worker's Compensation Act, D.C.Code § 36-304(a). In *Mitishen,* an employee was injured while riding in an elevator in the World Bank building. Following the accident, the employee filed a claim for workers' compensation benefits and also initiated an action for damages against his employer.

The Court held that D.C.Code § 36–304(a) makes workers' compensation benefits the exclusive remedy for the employee. That statement notwithstanding, it is well-established that the D.C. Workers' Compensation Act does not preempt an employee's common law tort claims under these circumstances. *See Underwood v. National Credit Union Admin.*, 665 A.2d 621 (D.C.App.1995) (emotional distress attributable to sexual harassment not a statutory injury arising out of employment so as to be subject to exclusive remedy provision of Workers' Compensation Act); *Webb v. Hyman*, 861 F.Supp. 1094 (D.D.C.1994) (Worker's Compensation Act does not preempt employee's claim for intentional infliction of emotional distress related to harassment claim).

▮▮▮ Second, the World Bank Staff Rule, on its face, is inapplicable here. The Rule applies to "injury . . . arising out of or in the course of the staff member's employment." World Bank/IFC Staff Rule 6.11, § 11.01. The injury complained of here did not arise out of or in the course of the staff member's employment. The IFC has alleged that "[t]he August 25, 1994 incident arose out of work-related conduct, since (a) Ms. Rendall–Speranza had entered Mr. Nassim's IFC office without authorization after hours, and (b) protecting IFC offices from unauthorized entry and potential theft of documents is part of the official duties of any IFC staff member." Mem. of IFC in Supp. of Mot. to Dismiss at 2. However, to determine whether injury to an employee arose "out of or in the course of the staff member's employment," the Court must look to the *staff member's* conduct. *See Underwood*, 665 A.2d at 635 (the Worker's Compensation Act focuses on the employee's employment, whereas the *respondeat superior* doctrine looks toward the tortfeasor's employment). *Accord O'Callaghan v. District of Columbia*, 741 F.Supp. 273 (D.D.C.1990) (employer may be sued for the intentional torts of its employees performing acts within the scope of their employment.). Although Mr. Nassim, the alleged tortfeasor, was acting in the scope of his employment, the IFC cannot plausibly allege that the plaintiff was. The IFC cannot expect the Court to accept its contention that the plaintiff was intending to steal files, and also accept its contention that the plaintiff was acting within the scope of her employment.

## III. THE ACTS ALLEGED IN THE AMENDED COMPLAINT ARE SUFFICIENT AS A MATTER OF LAW TO STATE A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The defendant has moved for dismissal of the plaintiff's claim for intentional infliction of emotional distress for failure to state a claim. Presuming true the plaintiff's allegations and liberally construing them in her favor, as the Court must, the Court cannot hold that the plaintiff's allegations are insufficient to support a claim for intentional infliction of emotional distress.

▮▮▮ To state a claim for intentional infliction of emotional distress, the plaintiff must show that the defendant (1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused the plaintiff severe emotional distress. *Anyaibe v. Gilbert Security Serv., Inc.*, Civ. No. 94–2377, 1995 WL 322452, *5 (D.D.C. May 18, 1995) (citing *King v. Kidd*, 640 A.2d 656, 667–68 (D.C.App.1993)). The complained-of acts must have exceeded "all possible bounds of decency and [could have been] regarded as atrocious and utterly intolerable in a civilized community." *Green v. American Broadcasting Co.*, 647 F.Supp. 1359, 1363 (D.D.C.1986) (quoting *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C.App.1980)). The plaintiff has alleged that the defendant intentionally caused her severe emotional distress. The defendant argues that the complained-of acts, as a matter of law, do not rise to "extreme and outrageous conduct."

▮▮▮ The Court is unwilling to hold that the conduct alleged here—including grabbing the plaintiff's wrists, twisting her arm, and kicking her shin—could not, as a matter of law, be considered intolerable in a civilized community. In the District of Columbia, presumably such a community, these acts are considered criminal. *See* D.C.Code § 22–504(a). The Court shall not dismiss the

plaintiff's claim for intentional infliction of emotional distress for failure to state a claim.

## IV. NOTWITHSTANDING THE PLAINTIFF'S UNTIMELY DEMAND THEREFOR, THE COURT SHALL ALLOW TRIAL BY JURY.

Pursuant to Rule 81(c) of the Federal Rules of Civil Procedure, a party demanding a jury trial must serve its demand within ten days after the petition for removal is filed if the party is the petitioner, or if not the petitioner, within ten days after service on the party of the notice of filing the petition. Fed.R.Civ.P. 81(c). A party who has made a demand in accordance with state law prior to removal need not make a demand after removal. *Id.* The failure of a party to make demand constitutes a waiver by that party of trial by jury. *Id.;* Fed.R.Civ.P. 38(d).

The plaintiff here did not serve a demand within the time period prescribed by the Federal Rules, nor did she make a demand in the Superior Court according to its Local Rules. *See* D.C.Super.Ct.R.Civ.P. 38 (party must demand a trial by jury within ten days after the service of the last pleading directed to any issue triable of right by a jury; failure to do so constitutes waiver). However, under both the Federal and D.C. Superior Court rules, the Court, in its discretion, may order a trial by jury notwithstanding the failure of a party to demand a jury trial. Fed.R.Civ.P. 39(b); D.C.Super.Ct.R.Civ.P. 39(b). Given the plaintiff's demand for a jury trial, however untimely, in her Amended Complaint and the lack any alleged prejudice to the defendant by the untimeliness of her demand, the Court shall order a trial by jury on the plaintiff's remaining claims.

## CONCLUSION

Based on the foregoing, the Court shall grant the defendant's Motion to Dismiss with respect to the plaintiff's claim of assault and battery based on incidents occurring before August 24, 1994, and shall otherwise deny the defendant's Motion to Dismiss; deny the defendant's Motion for Summary Judgment; grant the plaintiff's Motion for Leave to File an Amended Complaint; and grant the IFC's Leave to File a Supplemental Brief.