Margot RENDALL–SPERANZA,
Plaintiff,

v.

Edward A. NASSIM and the
International Finance
Corp., Defendants.

Civil Action No. 95–01855 (CRR).

United States District Court,
District of Columbia.

July 8, 1996.

David H. Shapiro of Swick & Shapiro, P.C., Washington, DC, for Plaintiff.

Lester Nurick, Thomas P. Olson, Eric J. Mogilnicki, Lawrence A. Kasten and Sara Needleman Kline of Wilmer, Cutler & Pickering, Washington, DC, for Defendant International Finance Corporation.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court in the above-entitled case are the defendant International Finance Corporation's ("IFC's") Motion to Dismiss and to Strike and the plaintiff's Opposition thereto. Upon consideration of the parties' pleadings, the entire record herein, the law applicable thereto, and for the reasons expressed below, the Court shall deny the IFC's Motion to Dismiss and shall grant the IFC's Motion to Strike.

### BACKGROUND

The plaintiff in this case began working for the World Bank in October 1992 as an investment officer in the IFC division. Am.

Compl.[1] ¶ 5. The plaintiff alleges that, from the inception of her employment with the World Bank/IFC, her supervisor, Edward A. Nassim, has subjected her to "pervasive unwelcomed [sic], harassing, demeaning. and humiliating language and physical contacts ... in order to pressure plaintiff emotionally into engaging in sexual activity with him." *Id.* ¶ 6. The plaintiff alleges that Nassim's behavior culminated in an assault and battery on the evening of August 25, 1994, at the World Bank offices in Washington, DC, when Nassim grabbed her at the wrists, twisted her right arm behind her back, and kicked her with his foot in her left shin. *Id.* ¶ 6. The defendant Nassim alleges that this incident occurred when he discovered the plaintiff trespassing in his office. Def. Nassim's Mot. to Dismiss at 1.

On August 24, 1995, the plaintiff filed suit in the Superior Court of the District of Columbia, naming Nassim, but not the IFC, as a defendant. Nassim removed the action to this Court pursuant to 28 U.S.C. § 1441 and moved for a more definite statement. In response to the Court's Order of November 2, 1995, the plaintiff filed a first amended complaint on December 11, 1995, again naming Nassim, but not the IFC.

On January 17, 1996, the defendant moved to dismiss the first amended complaint asserting, among other things, that any claim based on the August 25, 1994 incident is barred by the immunity afforded him pursuant to the International Organizations Immunities Act, 22 U.S.C. § 288. On January 26, 1996, the IFC filed an *amicus curiae* brief, in which it alleged that Nassim was acting in his official capacity as an IFC employee on August 25, 1994 by "protecting IFC offices from unauthorized entry and potential theft of documents." IFC's *amicus* brief at 2. On February 12, 1996, the plaintiff filed a Motion for Leave to File an Amended Complaint, seeking to add the IFC as a defendant on a theory of *respondeat superior.* On February 23, 1996, the IFC filed a supplemental *amicus curiae* brief, asserting that it, too, is immune from suit in the above-entitled case and that the World Bank's Workers' Com-

pensation system is the only remedy for the plaintiff's alleged injuries.

On March 18, 1996, the Court filed a Memorandum Opinion and Order in the above-captioned case, denying Nassim's Motion to Dismiss and granting the plaintiff's Motion for Leave to File an Amended Complaint in order to name the IFC as defendant. The defendant Nassim has appealed the Court's March 18, 1996 Order. On March 22, 1996, the plaintiff filed an amended complaint, adding a claim for assault and battery against the IFC based on the August 25, 1994 incident.

The defendant IFC has now moved to dismiss the claim against it on four independent grounds: (1) the plaintiff's claim is barred by the applicable one-year statute of limitations; (2) the IFC's Articles of Agreement, not the Foreign Sovereign Immunities Act, is the pertinent source of law regarding waivers of the IFC's immunity, and its Articles do not waive immunity for employee suits such as the present suit; (3) even if the FSIA further limited the IFC's immunities, the present suit would be barred because it is grounded in "discretionary functions"; and (4) the plaintiff's exclusive remedy for her alleged injury is the World Bank's Workers' Compensation system. The IFC further moves to strike the plaintiff's jury demand and claim for punitive damages.

### DISCUSSION

 Pursuant to Rule 12(b)(1), the Court must dismiss a claim if the Court lacks subject matter jurisdiction over that claim. Fed.R.Civ.P. 12(b)(1). Under Rule 12(b)(6), a claim must be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In evaluating the plaintiff's complaint on a motion to dismiss, the Court must accept the factual allegations as true and draw all reasonable inferences therefrom in favor of the plaintiff. *Maljack Productions, Inc. v. Motion Picture Ass'n of Am., Inc.,* 52 F.3d 373, 375 (D.C.Cir.1995).

---

1. The Amended Complaint referred to herein was filed March 22, 1996.

## I. THE PLAINTIFF'S ASSAULT AND BATTERY CLAIM AGAINST THE IFC RELATES BACK TO THE ORIGINAL COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(C)(3) AND, THUS, IS NOT TIME–BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

The plaintiff filed her second amended complaint in this action on March 22, 1996, adding the IFC as a defendant to her assault and battery count relating to the incident that occurred August 25, 1994. Under the District of Columbia law, the limitations period for filing a complaint for assault and battery is one year. D.C.Code § 12–301(4). Thus, unless the second amended complaint relates back to her original complaint filed August 24, 1995, the plaintiff's claim against the IFC is time-barred.

Rule 15(c)(3) of the Federal Rules of Civil Procedure provides, in pertinent part, that an amendment will relate back when: (1) the claim asserted in the amended pleading arose out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the party has received notice of the institution of the action such that the party will not be prejudiced in maintaining a defense on the merits; and (3) the party knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. Fed.R.Civ.P. 15(c)(3); *see also Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).

■ Here, the assault and battery claim against the defendant IFC arises out of the same transaction as the assault and battery claim against the original plaintiff, Nassim. Furthermore, the IFC has received notice of the institution of the action as evidenced by the fact that it filed two *amicus curiae* briefs. Consequently, the IFC would not be prejudiced if required to maintain a defense on the merits. Thus, the first two requirements of Rule 15(c)(3) clearly are satisfied.

■ The determination whether to dismiss the claims against the IFC rests on the third requirement of Rule 15(c)(3), that is, whether the IFC knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the organization. This determination requires the Court to discern the meaning of the phrase "mistake concerning the identity of the proper party," whether it is limited to mere misnomers or whether the law prescribes a broader interpretation.

Some circuits view Rule 15(c)(3) in strict fashion, allowing relation back of amendments that correct only technical misnomers of a party. *See, e.g., Worthington v. Wilson,* 8 F.3d 1253, 1257 (7th Cir.1993); *Louisiana–Pacific Corp. v. ASARCO, Inc.,* 5 F.3d 431, 434 (9th Cir.1993); *Wandrey v. Service Business Forms, Inc.,* 762 F.Supp. 299, 302 (D.Kan.1991). Others, however, have not so limited the use of Rule 15(c)(3). *See, e.g., Brown v. Georgia Dept. of Revenue,* 881 F.2d 1018 (11th Cir.1989) (former state employee properly permitted to amend civil rights complaint to add individual members of State Personnel board when board was served with original complaint within limitations period and amending complaint was necessary to comply with Eleventh Amendment); *Fromson v. Citiplate, Inc.,* 886 F.2d 1300 (Fed.Cir. 1989) (amendment permitted adding defendants who were principal officers of corporation and could not have been surprised at motion to add them as defendants); *See also* 3 Moore's Federal Practice ¶ 15.15[4], at 15–167 n. 19 ("[T]he phrase 'a mistake concerning the identity of the proper party' should clearly not be read to limit its usefulness to cases of misnomer.... [I]f notice requirements are properly met it should make no difference whether the amendment corrects a mistake of fact or a mistake of law."). This Circuit has not definitively ruled to restrict the application of Rule 15(c)(3) to the mere technical misnomer of parties.

■ The Court notes that a strict reading of the phrase "mistake concerning the identity of the proper party" does not comport in all cases with the mandate of Rule 1, that is, that the Federal Rules shall be "construed and administered to secure the just, speedy, and inexpensive determination of every action." Rather, a narrow reading of the phrase "contravenes the widely-held under-

standing that this rule allows, in some circumstances, the addition of new parties that were never originally named or described" and "wrongly divert[s] attention from the 'central element' of notice. . . . 'Where an amendment seeks to add a new defendant, [the mistake] aspect of 15(c) seems designed to insure that, prior to the expiration of the limitations period, the new defendant knew (or should have known) that his joinder was a distinct possibility.'" *Advanced Power Sys., Inc. v. Hi–Tech Sys., Inc.*, 801 F.Supp. 1450, 1457 (E.D.Pa.1992) (citations omitted). Thus, courts have held that the mistake condition is satisfied when the party sought to be added has a sufficiently close identity of interests with the original party to have received constructive notice. *Id.* at 1457 (citing *Sounds Exp. Int'l, Ltd. v. American Themes & Tapes, Inc.*, 101 F.R.D. 694, 697 (S.D.N.Y. 1984)). This includes cases where a mistake in legal judgment was made in selecting the original defendants. *See Sounds Exp. Int'l*, 101 F.R.D. at 697 (1984).

In the present case, the plaintiff made more than a technical error in failing to name the IFC in her original complaint. The plaintiff explains, however, that only when the IFC "deliberately embraced" the actions of Nassim by filing an *amicus* brief in which they expressly admitted that Nassim was acting within the scope of his employment (thereby establishing a basis in fact for *respondeat superior* liability), could she have had a basis to sue the IFC. Pl's Opp. at 6. The IFC and the original defendant Nassim have a close identity of interest, as Nassim is a supervisory employee at the IFC, such that the IFC should have known that, but for a mistake, it would have been named. The filing of the *amicus* briefs by the IFC necessarily means that they were on notice of the suit and will not be prejudiced by maintaining a defense on the merits. Under these circumstances, the Court shall hold that the amendment adding the IFC relates back to the original complaint pursuant to Rule 15(c)(3). Thus, the assault and battery claim against the defendant IFC is not time-barred under D.C.Code Ann. § 12–301(4).

## II. THE PLAIN LANGUAGE OF THE INTERNATIONAL ORGANIZATIONS PRIVILEGES AND IMMUNITIES ACT INCORPORATES THE TERMS OF THE FOREIGN SOVEREIGN IMMUNITIES ACT OF 1976; THE IFC IS NOT IMMUNE FROM SUIT FOR THE ACTS COMPLAINED OF HERE.

In the Court's Memorandum Opinion and Order of March 18, 1996, the Court held that the FSIA applies to international organizations such as the IFC and that, pursuant to the FSIA's provisions, the IFC is not immune from suit for the acts complained of here. The IFC argues, first, that the FSIA does not apply to it and, second, that even if the FSIA applies, the IFC is immune from suit. This Court disagrees with the IFC and shall reaffirm its previous decision.

### A. *The Plain Language of the International Organizations Immunities Act Incorporates the Terms of the Foreign Sovereign Immunities Act.*

The International Organizations Immunity Act (IOIA) of 1945 provides that "International organizations . . . shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract." 22 U.S.C. § 288a(b). At the time the IOIA was enacted, foreign governments enjoyed broad immunity. The Foreign Sovereign Immunities Act ("FSIA"), enacted in 1976, provides the sole basis for obtaining jurisdiction over a foreign government in a United States court. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443, 109 S.Ct. 683, 693, 102 L.Ed.2d 818 (1989). The FSIA defines the immunity for foreign states, and provides that

> Subject to international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except . . . a foreign state shall not be immune . . . in any case—in which

money damages are sought against a foreign state for personal injury ... occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except [for] any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless whether the discretion be abused....

28 U.S.C. § 1605(a)(5). Section 1605(a)(5) is essentially a *respondeat superior* statute, providing an employer with liability for certain tortious acts of its employees. *Skeen v. Federative Republic of Brazil,* 566 F.Supp. 1414, 1417 (D.D.C.1983).

In the Court's previous Memorandum Opinion and Order, it held that the IOIA incorporates the subsequently enacted FSIA. The Court recognizes, however, that this is an unsettled question. Courts that have been presented with this question have avoided deciding it on the basis that the particular international organization at issue was immune from suit whether or not the FSIA applied. *See Broadbent v. Organization of Am. States,* 628 F.2d 27, 32–33 (D.C.Cir.1980); *Mendaro v. World Bank,* 717 F.2d 610, 618 n. 54 (D.C.Cir.1983); *Morgan v. International Bank for Reconstruction & Development,* 752 F.Supp. 492, 494 (D.D.C. 1990). In the present case, the defendant would be immune from suit if the FSIA did not apply because "[d]ecisions in this Circuit have uniformly upheld immunity in cases involving relations between an international organization and its employees." *Morgan,* 752 F.Supp. at 493 (citing *Mendaro,* 717 F.2d at 610, *Tuck v. Pan Am. Health Org.,* 668 F.2d 547 (D.C.Cir.1981); *Broadbent,* 628 F.2d at 27; *Chiriboga v. International Bank for Reconstruction & Development,* 616 F.Supp. 963 (D.D.C.1985); *Novak v. World Bank,* Civ.Act. No. 81–1329 (D.D.C. Dec. 21, 1983)). However, under the more restrictive immunity afforded by the FSIA, the IFC would not be immune from suit for the assault and battery complained of here, as was determined by this Court in its previous Memorandum Opinion and Order dated March 18, 1996. Thus, the Court must decide whether the FSIA applies to international organizations such as the IFC.

The Court recognizes that there are sound reasons for affording broad immunity to international organizations. These reasons have been detailed by the Court of Appeals in *Broadbent,* 628 F.2d at 31–33. In sum, the reasons are that the FSIA generally is silent about international organizations, that the IOIA provides for the modification of immunity by the President, and that Congress may have concluded that the policies that led to the development of the restrictive immunity concept for foreign governments do not apply to international organizations.

■ Nevertheless, the Court concludes that it is constrained by the plain language of the IOIA, which grants to international organizations "the *same* immunity ... enjoyed by foreign governments." 22 U.S.C. § 288a(b) (emphasis added). Ordinarily, "[a] statute which refers to the law of a subject generally adopts the law on the subject as of the time the law was invoked ... *includ[ing] all the amendments and modifications of the law subsequent to the time the reference statute was enacted.*" *Broadbent,* 628 F.2d at 31 (quoting Sutherland Stat. Construction § 51.08 (4th ed. 1975)) (emphasis added). Although Congress enacted the IOIA in 1945, when foreign governments enjoyed broad immunity, presumably it knew how to revise the IOIA when the immunity of foreign governments was diminished with the passage of the FSIA. Inaction on the part of Congress implies that Congress felt the more restrictive immunity afforded foreign governments under the FSIA was to apply in like fashion to international organizations. The Court must adhere to the plain language of the IOIA, which affords to international organizations only the immunity of foreign governments.

B. *Pursuant To The FSIA, The IFC Is Not Immune From Suit For The Acts Complained Of Here.*

■ The IFC argues that, even if the FSIA applies, the actions complained of here fall within the "discretionary function" exemption to the *respondeat superior* liability established by the FSIA. *See* 28 U.S.C. § 1605(a)(5). The Court fully addressed that issue in its March 18, 1996 Memorandum Opinion when it determined that the alleged

actions of the plaintiff's supervisor—that he grabbed the plaintiff's wrists, twisted her arm behind her back, and kicked her shin—cannot be said to be a "discretionary function" within the meaning of the FSIA. The Court hereby reaffirms the conclusion reached in March 18, 1996 Memorandum Opinion for the reasons expressed therein.

### III. THE WORLD BANK'S WORKERS' COMPENSATION SYSTEM IS INAPPLICABLE HERE BECAUSE THE INJURY COMPLAINED OF DID NOT ARISE OUT OF OR IN THE COURSE OF THE PLAINTIFF'S EMPLOYMENT.

■ The Court also addressed the IFC's argument that the World Bank's Workers' Compensation system is the sole avenue of relief for the plaintiff. The Court hereby reaffirms its conclusion reached in the March 18, 1996 Memorandum Opinion that the injury here did not arise out of or in the course of the plaintiff's employment and, thus, that the Workers' Compensation system is inapplicable.

### IV. THE COURT SHALL STRIKE THE PLAINTIFF'S JURY DEMAND AND REQUEST FOR PUNITIVE DAMAGES AS AGAINST THE IFC.

The FSIA provides for jurisdiction in the district courts of "nonjury civil actions." 28 U.S.C. § 1330(a). Furthermore, the removal statute provides that a case removed to a district court by a foreign state "shall be tried by the court without jury." 28 U.S.C. § 1441(d). The FSIA also precludes an award of punitive damages against foreign states. 28 U.S.C. § 1606. Having determined that the immunities of the FSIA apply to the IFC, the Court shall grant the defendant IFC's motion to strike the plaintiff's jury demand and request for punitive damages.

### CONCLUSION

Based on the foregoing, the Court shall deny the Defendant's Motion to Dismiss and shall grant the defendant's Motion to Strike.